**UNITED STATES of America**

v.

**Andrew John BLACK.**

**No. 73–60 Cr–J–T.**

United States District Court,
M. D. Florida,
Jacksonville Division.

July 12, 1976.

John L. Briggs, U. S. Atty., Robert S. Yerkes, Asst. U. S. Atty., for U. S.

William J. Sheppard, Jacksonville, Fla., for Black.

Andrew John Black, pro se.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

CHARLES R. SCOTT, District Judge.

The defendant, Andrew John Black, is charged by a three-count indictment filed

April 5, 1973, with possession with intent to distribute; importation; and conspiracy, all relating to marijuana. The criminal activity alleged in the indictment occurred during the period from February 1, 1972, up to and including May 22, 1972. Defendant was arrested on January 5, 1976, and on January 27, 1976, filed his Motion to Dismiss the Indictment on the grounds that defendant's right to speedy and public trial had been denied under the Sixth Amendment to the United States Constitution; and in the alternative for the reason that there had been unnecessary delay in bringing defendant to trial in violation of Rule 48(b), *Federal Rules of Criminal Procedure.* Hearing was held on defendant's Motion to Dismiss Indictment on June 24 and 25, 1976.

## FINDINGS OF FACT

1. The criminal activity with which defendant is charged occurred not later than May 22, 1972.

2. Defendant was charged by an indictment filed on April 5, 1973, and a warrant for defendant's arrest was issued on April 6, 1973.

3. Defendant was arrested on January 5, 1976; and on January 27, 1976, filed a Motion to Dismiss Indictment.

4. From the time of the filing of the indictment herein and from January 2, 1973, defendant was continually enrolled as a full-time student at the University of Florida except for the periods from mid-June, 1973, to March, 1974, and from mid-June, 1975, to mid-September, 1975. Defendant was enrolled under the name of Andrew John Black at the University of Florida, the same name under which the indictment and warrant were issued. Prior to January 2, 1973, defendant was also a student at the University of Florida from September 15, 1970, to March 22, 1971.

5. On and after May 22, 1972, agents of the United States Customs Service had in their possession a billfold which they believed belonged to the defendant and which billfold was seized from the scene of the criminal activity alleged in the indictment. Among other things, the billfold contained a student identification card from the University of Florida with defendant's Social Security number thereon; a Florida driver's license; a voter identification card from Alachua County, Florida; defendant's Selective Service Identification Card; and a State Farm Insurance Company identification card. All of the foregoing identification cards contained the defendant's correct name and address of 820 N.W. 17th Avenue in Gainesville, Alachua County, Florida. Also included in the billfold were two credit cards bearing the name Edward A. Black. Edward A. Black is the father of defendant and resides at 1990 Park Place, Boca Raton, Florida, and has resided at the foregoing address for the past thirteen years. During June, 1972, an agent of the United States Customs Service went to the address contained on the documents taken from defendant's billfold in Gainesville, Florida, but found that defendant no longer resided there. The agent in June, 1972, also consulted the Student Directory at the University of Florida but did not find defendant's name therein. He also checked the Gainesville telephone directory and the Gainesville city directory, but did not find defendant listed.

6. After the filing of the indictment on April 5, 1973, and the issuance of the warrant for defendant's arrest on April 6, 1973, agents of the United States Customs Service and the Drug Enforcement Administration of the United States Department of Justice took few steps to ascertain the whereabouts of the defendant. On April 13, 1973, a correspondence was sent to defendant at the address obtained from the identification cards in the billfold believed to be defendant's. The letter was returned to the Customs Service. On October 25, 1973, the Customs Service interviewed the father of a co-defendant in an attempt to ascertain defendant's whereabouts. Defendant's name was entered in the National Crime Information Center (NCIC) by a Customs Service agent on November 19, 1973.

7. The government introduced documentary evidence which reflected that the government had in its possession the per-

manent address of defendant's parents at 1990 Park Place, Boca Raton, Florida, and that said address was defendant's parents' address. The government also introduced documentary evidence which reflected that defendant's parents' address was available at the University of Florida from several documents which were filed with the University of Florida in Gainesville, Florida, as early as June 25, 1970.

8. Defendant introduced documentary evidence consisting of student records obtained from the University of Florida which contained three addresses furnished to the University of Florida as defendant's addresses from the time of the filing of the indictment herein until the present date. Defendant also introduced documentary evidence which indicated that defendant received correspondence from the Internal Revenue Service Center located at Chamblee, Georgia, with respect to the tax period which ended December 31, 1973. The Internal Revenue Service corresponded with the defendant utilizing the address of 402 N.W. 20th Street, Gainesville, Florida, one of the addresses contained in the student records of defendant at the University of Florida. The correspondence was forwarded by the United States Postal Service to defendant at his present address at 4523 S.W. 56th Terrace, Gainesville, Florida, which address was also contained in defendant's student records at the University of Florida.

9. During fiscal year 1973, the United States Customs Service office in Jacksonville was staffed by three agents and one supervisor. Their area of responsibility included all of Northern Florida and Southern Georgia consisting of 24 counties in Florida and 30 counties in Georgia, and an area of 33,293 square miles having 360 miles of coastline. In this area of jurisdiction there are approximately 75,000 private and commercial vessels. During this period approximately 850 private, commercial, and military aircraft were cleared by U. S. Customs at Jacksonville, and on board these aircraft were approximately 10,500 passengers also cleared by Customs at Jacksonville. There were approximately 2,000 private, commercial, and military vessels also cleared. Also, during this period approximately 500 investigative cases were opened and closed concerning the smuggling of merchandise and contraband, cargo theft, navigation violations, and Customs related fraud against the revenue. Over 9,000 hours were worked resulting in 52 arrests, 42 narcotic related seizures involving over ten tons of marijuana, six pounds of hashish, one pound each of heroin and cocaine, 26 seizures of general merchandise, liquor, guns and vehicles totaling $88,350 and 78 penalties were assessed totaling $571,031. The personnel of the Office of Investigations drove approximately 120,000 miles during this period.

10. The United States Marshal's Office in the Jacksonville Division of the Middle District of Florida did nothing with respect to attempting to serve the warrant on defendant issued on April 6, 1973, until June, 1974. At that time contact was made by the United States Marshal's Office of the Jacksonville Division of the Middle District of Florida with an unknown employee of the United States Customs Service. The documents in the possession of the United States Customs Service which were believed to be the defendant's were never brought to the attention of the United States Marshal's Office. After June, 1974, the United States Marshal's Office for the Jacksonville Division of the Middle District of Florida set aside any efforts to serve the warrant on defendant until some time in July, 1975. At that time an NCIC criminal history and Florida Department of Law Enforcement criminal history were obtained on defendant which provided no information except an address where defendant had resided in December of 1970 which was obtained by a check with local authorities. The United States Marshal had in his possession from April 9, 1973, the Selective Service number and Social Security number of defendant as well as defendant's previous address in Gainesville, Florida. No attempts, however, were made to obtain the assistance of the United States Marshal's Office for the Northern District of Florida in which Gainesville, Florida, is located. The war-

rant for defendant's arrest was never forwarded to the United States Marshal for the Northern District.

11. The government introduced documentary evidence which reflected that defendant received three traffic violations in Alachua County, Florida, on February 15, 1974; October 1, 1974; and January 22, 1975. This information was obtained subsequent to the arrest of defendant but was available upon request at any time prior thereto. This information also would have provided the Marshal with the defendant's parents' address.

## CONCLUSIONS OF LAW

Both the Sixth Amendment to the Constitution of the United States and Rule 48(b) of the *Federal Rules of Criminal Procedure* require dismissal of the indictment in this case. Defendant was indicted April 5, 1973. He was, therefore, an accused person guaranteed a speedy trial by the Sixth Amendment. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

*Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) sets forth the factors to be considered in determining whether that speedy trial guarantee has been violated. Those factors are: 1) the length of delay, 2) the reason for the delay, 3) the defendant's assertion of his rights, and 4) prejudice to the defendant.

In this case, the delay has been inordinately long—44 months since the alleged offense and 33 months since the indictment. This is sufficient delay to trigger inquiry into the remaining factors.

The reason for the delay is that defendant was not arrested until January, 1976. The failure to arrest him, however, was not justified in this case. Defendant was not a fugitive. For most of the time, he was a full-time student, enrolled under his own name, at the University of Florida. Means of ascertaining defendant's whereabouts were available to the government. Had adequate steps been taken, the defendant could have been arrested much sooner. The Court can only conclude, therefore, that the delay is inexcusable.

Defendant did not assert his right to a speedy trial. There is no indication, however, that until his arrest he was aware of the pending indictment.

Prejudice to the defendant is inherent in any pre-trial delay. In addition to the potential prejudices to the defense of the case, defendant has suffered one obvious prejudice. He is now 27 years old. Had he been prosecuted and convicted several years ago he would have been eligible for sentencing as a young adult offender. Several of his co-defendants received such sentences. Defendant would now be ineligible for such treatment.

Rule 48(b) of the *Federal Rules of Criminal Procedure* emphasizes the nature of the delay rather than prejudice to the defendant. Dismissals under this rule can be on nonconstitutional as well as constitutional grounds. In this case, the Court is convinced the delay in bringing defendant to trial was unnecessary.

Therefore, it is

ORDERED:

1. Motion to dismiss the indictment, filed herein January 27, 1976, is hereby granted.

2. The indictment in this case, filed herein April 5, 1973, is hereby dismissed with prejudice.