Richard G. SMITH, Appellant,

v.

James MABRY, Commissioner, Arkansas
Department of Corrections, Appellee.

No. 77–1112.

United States Court of Appeals,
Eighth Circuit.

Submitted May 20, 1977.

Decided Oct. 21, 1977.

William H. Trice, III, Little Rock, Ark., for appellant; Gary P. Barket, Little Rock, Ark., on briefs.

Joseph H. Purvis, Asst. Atty. Gen., Little Rock, Ark., for appellee; Bill Clinton, Atty. Gen., and Gary B. Isbell, Asst. Atty. Gen., Little Rock, Ark., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Richard G. Smith appeals from the denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, in which he claimed he was deprived of his Sixth Amendment right to a speedy trial. We affirm.

On June 25, 1972, appellant was arrested and charged with the burglary and grand larceny of a pharmacy in Osceola, Arkansas. Approximately thirty-one days later, following his arraignment, he escaped from the Mississippi County, Arkansas, jail where he was being held. He ultimately fled to the State of Mississippi, where in August of 1972, he burglarized another pharmacy. He was apprehended and incarcerated, but again he escaped and subsequently went to Memphis, Tennessee. There he enrolled in a drug rehabilitation program at the Veterans' Administration Hospital. After he al-

legedly notified officials in Arkansas and Mississippi of his whereabouts, he was arrested in November, 1972, by Mississippi authorities and returned to that state for trial. He pled guilty and was sentenced to a term of eighteen months imprisonment for the burglary of the Mississippi pharmacy.

While serving his sentence, appellant learned that on March 5, 1973, the State of Arkansas had filed a detainer against him for the burglary of the Osceola pharmacy and the escape from the Mississippi County jail. Seeking to invoke the provisions of the Interstate Agreement on Detainers,[1] he mailed a petition for a writ of mandamus to the clerk of the state court at Osceola, Arkansas, by certified mail, demanding a speedy trial. Although the evidence indicates the petition was received in the clerk's office on May 10, 1973, appellant was not returned to Arkansas until November 7, 1973. Because he was unable to meet his $10,000 appearance bond, he was held in the Mississippi County Jail until his trial on March 18, 1974. A jury found him guilty of the burglary charge, but acquitted him of the grand larceny charge. He was sentenced to twenty-one years imprisonment in the state corrections system.

Appellant failed to raise the speedy trial issue during his trial and chose not to take a direct appeal of his conviction to the Arkansas Supreme Court. Rather, he brought a petition for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure, claiming, *inter alia*, that he had been denied a speedy trial. The state circuit court found he had not been deprived of his right to a speedy trial, and the Arkansas Supreme Court affirmed. *Smith v. Arkansas*, 258 Ark. 533, 528 S.W.2d 359 (1975).

Appellant then filed his petition for a writ of habeas corpus in the United States District Court for the Eastern District of Arkansas. *See* 28 U.S.C. § 2254. He asserted three grounds for relief: that his trial was held after the 180-day period provided by the Interstate Agreement on Detainers; that he was not tried within the time prescribed by Ark.Stat.Ann. § 43–1708; and that his Sixth Amendment right to a speedy trial was violated. Following a hearing, the District Court[2] rejected each of appellant's grounds for relief and denied the petition for a writ of habeas corpus.[3] Appellant has now abandoned his first two claims for relief and asserts only his Sixth Amendment claim on this appeal.

■ In assessing appellant Sixth Amendment claim the starting point is *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in which the Supreme Court enunciated an *ad hoc* balancing test to be applied in determining whether a defendant has been deprived of his constitutional right to a speedy trial. The Supreme Court identified four factors that should be considered in making this determination: the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and the resulting prejudice to the defendant from the delay. 407 U.S. at 530, 92 S.Ct. 2182.

■ *The length of the delay.* The ten-month delay that elapsed between appellant's demand for a speedy trial and his subsequent trial is sufficiently lengthy to trigger a further inquiry into his speedy trial allegations. *See Paine v. McCarthy*, 527 F.2d 173, 176 (9th Cir. 1975), *cert. denied*, 424 U.S. 957, 96 S.Ct. 1434, 47 L.Ed.2d 363 (1976); *United States v. Strunk*, 467 F.2d 969, 971–72 (7th Cir. 1972), *rev'd on other grounds*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). The delay is not, however, so inordinately lengthy that it requires an automatic dismissal. *See Barker*

---

1. As the District Court found, however, Mississippi was not a party to the Interstate Agreement on Detainers.

2. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

3. Judge Eisele's opinion is published at 433 F.Supp. 392 (E.D.Ark.1976).

*v. Wingo, supra* (five-year delay; no denial of speedy trial); *United States v. Larson,* 555 F.2d 673, 675 (8th Cir. 1977) (fifteen-month delay; no denial of speedy trial); *United States v. Smith,* 552 F.2d 257, 262 (8th Cir. 1977) (twenty-one month delay; no denial of speedy trial); *United States v. Crow Dog,* 532 F.2d 1182, 1192–94 (8th Cir.), *application for stay denied,* 426 U.S. 917, 96 S.Ct. 2620, 49 L.Ed.2d 370 (1976) (twenty-two-month delay; no denial of speedy trial). The ten-month delay in this case is, however, long enough to require consideration of the other relevant factors.[4]

■ *The reason for the delay.* The District Court found that while the State of Arkansas was unaware that appellant had filed a writ of mandamus demanding a speedy trial and a waiver of extradition, its lack of knowledge "was attributable to the State's failure to discover the petitioner's writ."[5] While the District Court indicated it was difficult to understand the reasons for the State's failure to discover appellant's writ, it found that the State did not intentionally delay appellant's trial. In *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. 2182, the Supreme Court recognized that negligence should be weighted less heavily against the state than a deliberate attempt by the government to delay the trial, but the ultimate responsibility for a delay caused by government negligence must rest with the state, *id.; see Dickey v. Florida,* 398 U.S. 30, 37–38, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). The negligence of the state must be considered in light of its

"constitutional duty to make a diligent, good-faith effort to bring" the accused to trial upon his demand even when he is incarcerated in another jurisdiction. *Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). This duty is particularly strong when the accused is incarcerated. *Id.* at 378–80, 89 S.Ct. 575, 579.

■ *Appellant's assertion of the right.* The District Court found that appellant asserted his right to a speedy trial on May 10, 1973, but that he failed to reassert this right again until he sought post-conviction relief following his trial. Appellant testified at the hearing on his petition for habeas corpus relief that he told his court-appointed attorney of this Sixth Amendment claim prior to trial, but that the attorney said the claim could be asserted in a post-conviction hearing. The District Court, however, concluded that an abstract of the testimony from the post-conviction hearing indicated appellant did not inform his counsel of the potential denial of his right to a speedy trial until *after* the March 18th trial. These findings are not clearly erroneous and were all properly considered in the balancing process. The District Court did find a specific demand for trial on May 10, 1973,[6] and we view the final test on that basis.

■ *Prejudice to appellant.* As the Supreme Court noted in *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. 2182, prejudice to the defendant should be assessed in light of the interests that the speedy trial

---

4. The District Court noted that prosecution commenced within the time frame provided by the Arkansas Speedy Trial statute, which in turn has been upheld by the Arkansas Supreme Court, *see Givens v. Arkansas,* 243 Ark. 16, 418 S.W. 629, *cert. denied,* 390 U.S. 956, 88 S.Ct. 1051, 19 L.Ed.2d 1149 (1968). While we do not think the state standard can substitute for an independent inquiry under federal constitutional standards, the District Court went on to apply the remaining *Barker* tests. *Barker* does not require such an examination unless the delay is sufficiently lengthy to trigger further inquiry. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We think it is thus implicit that the District Court considered the length of delay in its proper light under *Barker.*

5. A mix-up in the Osceola clerk's office caused the mandamus to be filed, but it was not docketed and the state court was never notified.

6. At the hearing on his petition for habeas corpus relief, appellant offered testimony that while in Tennessee he and a staff psychiatrist at the Veterans' Hospital had attempted to contact the authorities in Mississippi and Arkansas prior to the filing of his petition for a writ of mandamus. While Mississippi claimed appellant within two weeks thereafter, there was no positive evidence before the District Court which compelled a finding that a demand for speedy trial was made on Arkansas prior to May 10, 1973.

right was designed to protect, including prevention of oppressive pretrial incarceration, minimization of anxiety and concern on the part of the accused, and limitation of the possibility that the defense will be impaired. Of these, the last is the most serious. *Id.* The Supreme Court has also stated that these concerns "are both aggravated and compounded in the case of an accused who is imprisoned by another jurisdiction." *Smith v. Hooey, supra*, 393 U.S. at 378, 89 S.Ct. at 577.

Appellant contends that the delay had an adverse effect on the conditions of his pretrial confinement and also prejudiced him in the preparation of his defense. The District Court considered the claim of prejudice and held it insufficient to elevate the delay to Sixth Amendment stature. We agree.

■ First, during approximately eight of the ten months total delay appellant was completing his sentence in Mississippi. While it is possible that some adverse conditions of confinement were experienced between March, 1973 (when the detainer was lodged in Mississippi) and November 7, 1973 (when appellant was transferred to Arkansas), such a narrow time frame does not support a claim to reversal. The time in Arkansas custody added to the time in Mississippi must simply be considered in light of the overall length of delay absent some special showing of personal prejudice, which cannot be inferred from this record.

■ Second, the District Court considered carefully appellant's claims that he was unable to locate witnesses needed for his defense. It properly placed in the balancing process appellant's failure to establish that such witnesses could have been located if appellant had been able to attempt to do so at an earlier time. To this we add that appellant's own conduct had created a delay from July of 1972 (when he escaped) to the Spring of 1973, when Arkansas first became aware of his whereabouts. The record does not clearly establish when Arkansas could first have obtained custody of appellant, since Mississippi was not a party to the Interstate Detainer Agreement. In any event, no showing is made that the witnesses became unavailable after appellant demanded a speedy trial.

■ The District Court also observed that the missing testimony would have been offered only to impeach the testimony of appellant's codefendant, Ivory Walls, who testified for the state, rather than to exculpate the petitioner of his involvement in the crime. According to appellant, women who visited them while they were in jail prior to their escape would have testified that Walls exonerated appellant from participation in this burglary. Such allegations are insufficient to establish the prejudice to the appellant's defense required by *Barker v. Wingo, supra. See United States v. Page*, 544 F.2d 982, 984–85 (8th Cir. 1976).

■ We require more than was present here; the missing witness must be one who could supply material evidence for the defense. *United States v. Quinn*, 540 F.2d 357, 362 (8th Cir. 1976). Moreover, the state proved at trial by other evidence that both Walls and appellant were found inside the pharmacy with a washbasket of drugs in their possession. Under these circumstances the District Court did not err in giving little weight to the loss of hypothetical impeachment testimony.[7]

■ The opinion of the District Court reflects a careful balancing of the *Barker v. Wingo* factors to the facts of this case. Its findings are not clearly erroneous and no error of law appears. *See United States v. Graham*, 538 F.2d 261 (9th Cir. 1976), *cert.*

---

7. Our Court has not yet considered a speedy trial case in which the length of the delay was so great that, if the defendant had demanded a speedy trial and the reasons for delay were unsatisfactory, prejudice would be presumed. *See, e. g., Prince v. Alabama*, 507 F.2d 693, 707 (5th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108 (1975) (two and one-half year delay); *Hoskins v. Wainwright*, 485 F.2d 1186, 1192 (5th Cir. 1973) (eight year delay). In any event, the six month delay in this case, caused by negligence rather than malice, does not amount to such inordinate delay that no prejudice need be shown. *See United States v. Avalos*, 541 F.2d 1100, 1116 (5th Cir. 1976).

*denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 294 (1977).

Affirmed.