**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jose JENKINS, Defendant-Appellant.**

**No. 81–1886.**

United States Court of Appeals, Tenth Circuit.

Feb. 28, 1983.

Reber Boult, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Larry Gomez, Asst. U.S. Atty., Albuquerque, N.M. (Don J. Svet, U.S. Atty., Albuquerque, N.M., was also on the brief), for plaintiff-appellee.

Before HOLLOWAY and SEYMOUR, Circuit Judges, and KELLY, District Judge.*

HOLLOWAY, Circuit Judge.

Defendant-appellant Jose Jenkins brings this timely appeal of his convictions on Counts I through IV of a six-count indictment. Count I charged that Jenkins and a Ms. Jennings possessed with intent to distribute a quantity of cocaine, a Schedule II narcotic drug controlled substance on or about April 17, 1979 in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.[1] Count II charged that Jenkins and Ms. Jennings distributed a quantity of cocaine in violation of the same statutes, also on or about April 17, 1979. Count III charged Jenkins alone with possession with intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1) on or about April 23, 1979. Count IV charged Jenkins alone with distribution of a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1) on or about April 23, 1979. Counts V and VI made similar possession and distribution charges against Jenkins alone, alleged to have occurred on or about April 24, 1979, but he was acquitted on those charges. Ms. Jennings made a plea bargain with the Government and agreed to testify against Jenkins in this case, which she did. (V R. 246–47).

For reversal, defendant argues (1) that the seven month delay between his offenses and the indictment was violative of his Fifth Amendment due process rights, (2) that the sixteen month delay between his indictment and his arrest violated his Sixth Amendment right to a speedy trial, (3) that the trial court erred in refusing to give an instruction on his defense that if he was acting as a government informer, or reasonably so believed, he should be acquitted, and (4) that the Government's peremptory challenge of the only Black on the jury panel gave rise to a requirement that the Government state its reason for the challenge, defendant being a Black. We find no merit in these contentions and accordingly affirm.

I

The Government's evidence tended to show the following circumstances:

During April 1979 Detective John Maruffi of the Albuquerque, New Mexico, police department and a confidential informant, both then engaged in an undercover drug investigation, negotiated with defendant for the sale to them of quantities of cocaine.

---

* The Honorable Patrick F. Kelly of the United States District Court for the District of Kansas, sitting by designation.

1. 18 U.S.C. § 2 provides:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 21 U.S.C. § 841(a)(1) provides:
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

Sales of approximately one and one-half ounces of cocaine which resulted in defendant's convictions took place on April 17 and 23, 1979. There is no dispute as to the occurrence of the sales; the only question at trial was as to the extent of defendant's participation in the sales and the reasons for that participation. (Appellant's Brief In Chief at 2, n. *).

On April 26, 1979, police officers executed a search warrant at defendant's home. Defendant was present throughout the search. The search was unproductive, and the officers released defendant without charging him. (II R. 34, 37, 42–43). Upon completion of his investigation concerning the defendant, Detective Maruffi forwarded the case to the United States Attorney's office in Albuquerque in mid-May, 1979. A grand jury indicted defendant and Ms. Jennings approximately seven months later, on November 19, 1979, jointly on Counts I and II and defendant Jenkins alone on Counts III through VI. As noted, Ms. Jennings made a plea bargain and testified for the Government against Jenkins in this case.

After the indictment was returned Detective Maruffi and, subsequently, Deputy United States Marshal Rudy Montoya attempted to apprehend defendant. Defendant had in fact left Albuquerque in May of 1979 and had moved into his parents' home in Victorville, California. He remained in residence there until his arrest on March 23, 1981, approximately sixteen months after his indictment. The record reveals no credible evidence that defendant left Albuquerque to avoid arrest, that he attempted to conceal his whereabouts, or that he knew of the indictment returned against him. (See II R. 38–39).

Defendant left no forwarding address with the Albuquerque post office (II R. 52); he did, however, leave an accurate forwarding address to his parents' Victorville home with his immediate past employer, the Council of Governments, with the City of Albuquerque, and with the Public Employees' Retirement Association. (II R. 29–30, 35; Defendant's Exhibits IIA, IIB).[2] In August 1979 defendant obtained employment in California with the Bendix Corporation, which he still held at least through sentencing. (II R. 36, Appellant's Brief in Chief at 3). The Government points to the fact that defendant initiated no telephone or electric or gas utility service in his name upon his arrival in California. We note, however, that defendant was living with his parents and it would appear unnecessary that defendant initiate any such service in his own name.

In attempting to locate defendant, Maruffi and Montoya, among other things,[3] checked the post office for a forwarding address, checked in Los Angeles for utility service in defendant's name, and made numerous standard inquiries in the Albuquerque area. Maruffi and Montoya did not contact defendant's past employers and they did not attempt to reach any of his relatives, although either of those contacts would have resulted in ascertaining defendant's California address.

It was not until March 23, 1981, that the investigating officers located defendant. An informant then told Montoya of defendant's Victorville, California, residence, and

2. Defendant also insists that during his Victorville residence he drove the same automobile that he had driven while in New Mexico, that the automobile bore the same New Mexico license plates it had then borne, and that he had had the address changed on his New Mexico registration certificate to reflect his move to Victorville; therefore, a check of New Mexico motor vehicles alone should have enabled New Mexico officials to locate him. (Appellant's Brief In Chief at 4). Defendant's name, however, did not appear on the registration with the Victorville address. Defendant testified that to avoid repossession, he had sold the automobile to Linda Higgins, and he had made financial arrangements to get the car back from her. (VI R. 388–90; Defendant's Exhibit IV F).

3. In his brief (Appellant's Brief In Chief at 4–7), defendant clearly lists all of the Government's efforts to locate him as disclosed by the record, and the methods he contends the Government should have used to locate him to have avoided much of the sixteen month delay between his indictment and arrest. We accept the conclusion of the trial judge, as set forth below, that the Government was negligent in its efforts to locate defendant.

defendant was arrested the same day. In view of these circumstances surrounding the sixteen month delay between defendant's indictment and arrest, the trial judge found that "the government was negligent in failing to locate the defendant, I think it properly could have .... " (VI R. 409–10). The trial judge nevertheless denied defendant's motion to dismiss which was based in part on this delay, after an evidentiary hearing.

Defendant was then tried before a jury on July 1, 2, and 6, 1981. As defendant's brief states, there was no question that the April 17 and 23, 1979, cocaine sales were made. The dispute was over the extent, if any, of defendant's participation and what the reasons were for any participation by him. (Appellant's Brief in Chief at 2, note *). Defendant testified he was working as an informant in the transactions so that he did not have the required intent to violate the law. The officer with whom he said he was working, Mr. Mares, admitted earlier contacts with defendant in that capacity and payment of money to defendant, but denied any such contacts at the time of the offenses.

Defendant was found guilty on two counts of possession with intent to distribute cocaine and two counts of distribution of cocaine. The trial judge merged Count I with Count II and Count III with Count IV for the purpose of sentencing and sentenced defendant to two terms of five years' imprisonment on the Counts as merged, with a special parole term of three years on each, the sentences all to run concurrently, and defendant appeals.

## II

■ Defendant first contends that the delay of approximately seven months from the time of the offenses until the indictment violates his Fifth Amendment due process rights.[4] The Supreme Court has held that although a defendant's primary protection against the Government's prosecution of overly stale criminal charges is the statutes of limitations, the Fifth Amendment's Due Process Clause does have a "limited role to play in protecting against oppressive delay." *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977).

Under *Marion* and *Lovasco* we have applied a two-part due process test to identify oppressive pre-indictment delay violative of the Fifth Amendment:

> [T]he rights of a defendant under the due process clause of the Fifth Amendment are not violated in the absence of a showing of actual prejudice resulting from the preindictment delay and that the delay was purposefully designed to gain tactical advantage or to harass the defendants.

*United States v. Revada,* 574 F.2d 1047, 1048 (10th Cir.1978), *quoting United States v. Beitscher,* 467 F.2d 269, 272 (10th Cir. 1972). *Accord, United States v. Gutierrez,* 696 F.2d 753 (10th Cir.1982); *United States v. McManaman,* 606 F.2d 919, 922–23 (10th Cir.1979); *United States v. Redmond,* 546 F.2d 1386, 1388 (10th Cir.1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1645, 56 L.Ed.2d 83 (1978); *United States v. MacClain,* 501 F.2d 1006, 1010 (10th Cir.1974).

■ We conclude that defendant's due process rights have not been violated by

---

**4.** The Sixth Amendment guarantee of a speedy trial is inapplicable to this seven month period preceding defendant's indictment. In *United States v. Marion,* 404 U.S. 307, 313–20, 92 S.Ct. 455, 459–463, 30 L.Ed.2d 468 (1971), the Supreme Court held that the "Sixth Amendment speedy trial provision has no application until the putative *defendant in some way becomes an 'accused....'* " Events which trigger Sixth Amendment protection are "indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge...." Id. at 320, 92 S.Ct. at 463. *See United States v. MacDonald,* 456 U.S. 1, 102

S.Ct. 1497, 71 L.Ed.2d 696 (1982); *United States v. Lovasco,* 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2048–2049, 52 L.Ed.2d 752 rehearing denied, 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977); *United States v. McManaman,* 606 F.2d 919 (10th Cir.1979); *United States v. Avalos,* 541 F.2d 1100–08 (5th Cir. 1976), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). The search of his home pursuant to a search warrant, defendant's only contact with the authorities prior to his indictment, was insufficient to trigger the Sixth Amendment's protection.

pre-indictment delay here. First, defendant has neither shown nor alleged actual prejudice resulting from such delay sufficient to violate the Fifth Amendment. Defendant merely testified and argued that he recognized voices of several witnesses, whom he named from hearing Government tapes; that he was unable to locate a number of these witnesses who would be important to his defense; that witnesses who were found had fading memories on important defense matters, and that his own memory as to events surrounding his offense was failing. (Appellant's Brief In Chief at 9–10; e.g., II R. 39–41). However, defendant does not demonstrate what particular facts could be proven by the witnesses. Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice for the purposes of impermissible preindictment delay; defendant must be able to show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided his defense. See United States v. McManaman, 606 F.2d 919, 923 (10th Cir.1979); United States v. Revada, 574 F.2d 1047, 1049 (10th Cir.); United States v. Buttorff, 572 F.2d 619 (8th Cir.), cert. denied, 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136, rehearing denied, 439 U.S. 884, 99 S.Ct. 228, 58 L.Ed.2d 199 (1978); Arnold v. McCarthy, 566 F.2d 1377, 1383–84 (9th Cir.1978); United States v. Schwartz, 464 F.2d 499, 504 (2d Cir.1972), cert. denied, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972) ("The evidentiary record indicates that appellant has also failed to demonstrate that any memory

lapses attributable to the time delay between the offense and the trial made 'suspect' the 'reliability of the proceedings for the purpose of determining guilt.' ").

Secondly, defendant fails to establish that the pre-indictment delay was purposefully caused by the Government to gain tactical advantage or to harass. In fact, defendant makes no allegation to that effect, nor is there evidence in the record to support such an allegation. See United States v. Revada, 574 F.2d 1047, 1049 (10th Cir.1978); United States v. MacClain, 501 F.2d 1006, 1010 (10th Cir.1974). Therefore defendant meets neither condition of our two-part test for establishing a due process violation by pre-indictment delay. We conclude that this constitutional claim is without merit.

### III

■ Defendant's second contention is that the delay of slightly over 16 months between his indictment and his arrest violated his Sixth Amendment right to a speedy trial. As discussed above, pre-indictment delay is not measured by Sixth Amendment standards; however, the returning of an indictment against a defendant serves to make him an "accused" and brings Sixth Amendment guarantees into play. United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971).[5] Furthermore, if defendant has indeed been denied his right to a speedy trial, dismissal of the charges is mandated. No other remedy is allowable. Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); United States v. Ramirez, 524 F.2d 283, 285 (10th Cir.1975).[6]

---

**5.** Of course, the constitutional claim of violation of the speedy trial guarantee is assessed, with respect to time, by the lapse of time from filing of an indictment or information or arrest on the charges, until trial. Marion, supra, 404 U.S. at 320–21, 92 S.Ct. at 463–464. We examine the question here in terms of only the 16-month portion of the delay because this is the time frame in which defendant makes his argument.

**6.** In Strunk, the Supreme Court held that in view of the important policies underlying the right to a speedy trial, dismissal is the only possible remedy for violation of that right.

Strunk, 412 U.S. at 439–40, 93 S.Ct. at 2263–2264. Courts are not permitted to fashion alternative "partial" remedies such as reducing a sentence to compensate for unconstitutional delay. Id. at 437–40, 93 S.Ct. at 2262–2263. See also United States v. Latimer, 511 F.2d 498 (10th Cir.1975); United States v. Saavedra, 684 F.2d 1293 (9th Cir.1982). Additionally, in Klopfer v. North Carolina, 386 U.S. 213, 221–26, 87 S.Ct. 988, 992–995, 18 L.Ed.2d 1 (1967), the Court discusses the historical background and importance of the speedy trial guarantee.

Rule 48(b), F.R.Crim.P., provides that the court may dismiss where there is "unnecessary

■ The Supreme Court has adopted a four-part test for judging the merits of claims of denial of a speedy trial. In *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), the Court adopted a balancing test that requires courts to approach speedy trial issues on an *ad hoc* basis, identifying four factors to consider in determining whether a particular defendant has been deprived of his right: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. No one factor alone is necessary or sufficient to establish a violation of the speedy trial guarantee; "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533, 92 S.Ct. at 2193; *see United States v. Graham,* 538 F.2d 261, 263 (9th Cir.1976), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 294 (1976).

■ The first factor, the length of the delay, is to some extent a triggering device. Unless there is some delay which is presumptively prejudicial, no inquiry into the other factors is necessary. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972). *See United States v. Latimer,* 511 F.2d 498, 501 (10th Cir.1975); *Smith v. Mabry,* 564 F.2d 249, 251–52 (8th Cir.1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978); *Trigg v. Tennessee,* 507 F.2d 949, 953 (6th Cir.1974), *cert. denied,* 420 U.S. 938, 95 S.Ct. 1148, 43 L.Ed.2d 414, *rehearing denied,* 420 U.S. 998, 95 S.Ct. 1439, 43 L.Ed.2d 680 (1975). Here

we find that the delay of some sixteen months complained of between indictment and arrest is clearly sufficient to provoke an inquiry into the other factors identified by the Court in *Barker.*

The second factor, the reason for the delay, here weighs against the Government. As discussed above, the trial court's finding, which is supported by the record, is that the Government was negligent in failing to locate and arrest defendant to face the charges. Also, as noted there is no credible evidence that defendant attempted to conceal himself or otherwise to hamper the Government's efforts to locate him.

■ In considering the reason for delay between indictment and trial, unintentional delay caused by such things as difficulty in getting a judge to try the case, *see United States v. Grismore,* 564 F.2d 929, 932 (10th Cir.1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978), and overcrowded dockets, *see United States v. Latimer,* 511 F.2d 498, 501 (10th Cir.1975)) must weigh against the Government. Similarly, the responsibility for the Government's own negligence, although unintentional, must weigh even more heavily in the balance. *See Smith v. Mabry,* 564 F.2d 249, 252 (8th Cir.1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978) ("... the ultimate responsibility for a delay caused by government negligence must rest with the state."); *United States v. Black,* 416 F.Supp. 59, 62 (M.D.Fla.1976).[7] We do not find any intentional delay here on the part of the Government, which would weigh

delay in bringing a defendant to trial." We have considered this provision but feel it calls for no separate discussion beyond that in this opinion treating the speedy trial guarantee of the Sixth Amendment.

7. In his brief (Appellant's Brief In Chief at 17), defendant cites *Black,* a case in which the court's balancing of the four *Barker* factors resulted in a dismissal of the Government's case against the defendant, as strong support for his prayer for dismissal, arguing that "... the government's failure to find [defendant] was unintentional and involved a degree of negligence comparable to that here. In neither case was the showing of prejudice as strong or as specific as that made here."

We disagree. First, the Government's negligence in *Black* was far greater—there the Government had in its possession during its entire search for defendant a wallet believed to belong to defendant, containing, among other things, defendant's student identification card, driver's license, Selective Service card, and insurance identification card, all with defendant's correct address. 416 F.Supp. at 60. Second, defendant there suffered the obvious prejudice of losing eligibility for sentencing as a young adult offender. *Id.* at 62. As we discuss below, the Government's negligence here is not as great as in *Black.*

quite heavily against it.[8] Nevertheless the Government's negligence in the case at bar lends some support to defendant's Sixth Amendment claim.

The third factor in the *Barker* balancing process, the defendant's assertion of his right, has no application here. In *Barker*, 407 U.S. at 532, 92 S.Ct. at 2192, the Court emphasized that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Here, however, the defendant testified that he was unaware of the indictment before his arrest and there is no evidence in the record to contradict him. Hence his failure to assert his right to a speedy trial does not weaken his Sixth Amendment claim.

 Finally, we must consider the prejudice to the defendant caused by the delay of some 16 months between the indictment and the defendant's arrest.[9] While a showing of prejudice is not necessary to a finding of a Sixth Amendment violation, *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973), there is some reluctance to find a speedy trial deprivation where there is no prejudice. *United States v. Brown*, 600 F.2d 248, 254 (10th Cir.1979), *cert. denied*, 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979).

 Under *Barker*, prejudice to the defendant is assessed in light of three interests the speedy trial guarantee is designed to protect: (1) prevention of oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *See United States v. Askew*, 584 F.2d 960, 962–63 (10th Cir.1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979); *Smith v. Mabry*, 564

F.2d 249, 252–53 (8th Cir.1977), *cert. denied*, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978). Here there was virtually no pretrial incarceration; defendant was free for the entire period of about sixteen months between the indictment and his arrest (or for that matter, from the time of the offenses until the arrest). Second, defendant admits that he was unaware of any charges against him until his arrest on March 23, 1981; thus, defendant can claim no excessive "anxiety and concern." And, as noted, he had a position with the Bendix Corporation during this period. Finally, defendant shows no actual prejudice by impairment of his defense due to the delay between indictment and arrest. He makes conclusory allegations of prejudice resulting from the passage of time, the absence of witnesses whom he names, and his failing memory. He offers no proof as to how the witnesses, if present, would testify. *See* Appellant's Brief In Chief at 9–10. Speculative allegations of an impaired defense are unpersuasive. *See United States v. Huffman*, 595 F.2d 551, 558 (10th Cir.1979); *United States v. Askew*, 584 F.2d 960, 962–63 (10th Cir. 1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979); *Smith v. Mabry*, 564 F.2d 249, 252–53 (8th Cir.1977), *cert. denied*, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978); *United States v. Graham*, 538 F.2d 261, 265 (9th Cir.1976), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 294 (1976).

Although we accept the finding that the Government was negligent in failing to locate and arrest the defendant until some sixteen months after he was indicted, after weighing all of the *Barker* factors, and considering especially the lack of a showing

---

**8.** Similarly, the defendant will not be heard to complain about delay which he caused. *United States v. Askew*, 584 F.2d 960, 962 (10th Cir. 1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979). *See United States v. Jones*, 543 F.2d 1171 (5th Cir.1976), *cert. denied*, 430 U.S. 957, 97 S.Ct. 1604, 51 L.Ed.2d 807 (1977).

**9.** Defendant suggests that for purposes of evaluating *prejudice* to him, the proper time period is the period of about twenty-three months

between his offense and his arrest, rather than the approximately sixteen-month period between indictment and arrest. (Appellant's Brief In Chief at 14). We need not decide whether, as a matter of law, defendant is entitled to consideration of the twenty-three month period for prejudice purposes, because, whether the period be sixteen months or twenty-three months, our analysis and conclusion are the same, based on the facts bearing on possible prejudice.

of prejudice by the delay, we conclude that the defendant's Sixth Amendment right to a speedy trial has not been violated.

## IV

Defendant's third contention is that the trial court erred in refusing to submit an instruction on his theory that if he was acting as a government informer, or reasonably so believed, he should be acquitted. Defendant submitted to the court a lengthy jury instruction detailing this theory of defense (I R. 65; V R. 369–70),[10] and the trial judge rejected it as an improper statement of the law. (V R. 370–71). We express no opinion on his proffered instruction, however, because we find that the jury instructions given by the trial judge, taken as a whole, sufficiently submitted defendant's theory of defense.

 Where there is evidence in the record supporting his theory, a defendant in a criminal case is entitled to an instruction to the jury concerning his theory of defense and failure to so instruct is reversible error. See United States v. Felsen, 648 F.2d 681, 685–86 (10th Cir.1981), cert. denied, 454 U.S. 861, 102 S.Ct. 317, 70 L.Ed.2d 159 (1981); United States v. Posey, 647 F.2d 1048, 1052–53 (10th Cir.1981); United States v. Hoopes, 545 F.2d 721 (10th Cir.

1976), cert. denied, 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 270 (1977). However the instructions submitted by defendant need not be given in the form requested, if the issues of the case are adequately covered in the charge. United States v. Nolan, 551 F.2d 266, 274–75 (10th Cir.1977), cert. denied, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977); United States v. Newson, 531 F.2d 979, 983 (10th Cir.1976). The sufficiency of the instructions is not determined by the giving or omission of particular instructions but by viewing the charge as a whole. United States v. Burns, 624 F.2d 95, 105 (10th Cir.1980), cert. denied, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980); United States v. Westbo, 576 F.2d 285, 289 (10th Cir.1978); United States v. Beitscher, 467 F.2d 269, 273 (10th Cir.1972).

 Defendant's theory of defense here is premised on his functions and his state of mind at the time of the drug sales in question. He testified he had been made an informant for the F.B.I. in 1972 and also for a narcotics detective, Mr. Mares, who was working for the Sheriff's office. (V R. 271)[11] Defendant basically contended he was acting as an informant and thus the willfulness and intent necessary for a violation of the statutes was lacking so that he should be acquitted. On appeal defendant argues that rejection of his instruction on

**10.** Defendant's proffered jury instruction read as follows:

The defendant asserts that government agents led him to believe he was working with law enforcement in investigating criminal conduct. Law enforcement officers and those acting under their authority are entitled to infiltrate groups of persons whom they know or suspect to be involved in criminal activity. There is nothing unlawful or improper in doing that. In infiltration of crime rings, a limited participation in their unlawful present practices is a recognized and permissible means of investigation.

If the jury finds that the defendant reasonably believed he was acting in concert with law enforcement, the jury must find defendant not guilty.

If the jury finds that defendant was an active informer for the government, then the jury must determine if his actions were within the scope of his authorized activity.

If the jury finds that at any point prior to April 17, 1979, defendant had entered into an

agreement with law enforcement to do undercover work, the jury must determine if these actions were within the agreement. The jury need not find that defendant was paid for these specific actions, in order to find his actions within the scope of the prior agreement with law enforcement. The jury need not find that law enforcement had specifically approved these particular actions, in order to find the actions within the scope of the agreement between defendant and law enforcement.

Such actions are within the scope of authorized activity if, under all the circumstances, defendant had a reasonable belief at the time of the alleged offenses that they were.

**11.** Mr. Mares testified he had had contact with defendant who was in an undercover capacity beginning in 1973 or 1974 and until 1977, that he furnished Jenkins some $15.00 to $50.00, but that he had not had any contact with Jenkins since 1977. (V R. 349–352).

this theory of defense was prejudicial error, citing *United States v. Davis,* 656 F.2d 153, 155–56 (5th Cir.1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982).[12] Here in his instructions to the jury the trial judge stated:

The crimes charged in this case are serious crimes which require proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the acts. *To establish specific intent, the Government must prove that the Defendant knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.*

*An act is "knowingly" done if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.*

(Instruction No. 20; I R. 95; emphasis added).

In addition, in the concluding paragraph of Instruction No. 19 dealing with actual and constructive possession and with sole and joint possession, the trial judge charged that:

*An act or failure to act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.*

(Instruction No. 19, I R. 94; emphasis added).

We agree that it would have been preferable to have referred to defendant's theory of defense and to the testimony bearing on it, and then to have submitted the issue with an instruction similar to those given on intent. However, taken as a whole we are satisfied that the court's instructions to the jury sufficiently submitted the issue presented by the defense. Therefore, the trial court did not err in rejecting defendant's requested instruction.

V

Defendant, who is a Black, argues that the Government's peremptory challenge of the only Black on the jury panel gave rise to a requirement that the Government state its reason for the challenge. During voir dire examination, the trial court refused to require the Government to do so (III R. 87), and defendant contends that his constitutional rights were thus violated. (Appellant's Brief In Chief at 20–21).

In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court undertook an extensive discussion of the development of the peremptory challenge in Anglo-American jurisprudence and stated that "[t]he essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *See Lewis v. United States,* 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892). The Court further stated that:

[w]e cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge.

380 U.S. at 221–22, 85 S.Ct. at 836–837. Further the Court concluded that:

[w]e cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that

---

**12.** Defendant says that *Davis* indicates that a defendant who claims that he was working for the police in a drug transaction is entitled to an instruction on this theory of defense. The case does not go that far. In *Davis,* 656 F.2d at 155–56, the Fifth Circuit merely acknowledges that

the trial court had so instructed the jury. The holding of the case was that a part of the wording of that instruction, unobjected to at trial, could have been worded more clearly but that it was not so prejudicial as to result in a manifest injustice.

the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it.

380 U.S. at 222, 85 S.Ct. at 836.

The Court therefore concluded it is permissible to insulate from inquiry the removal of Blacks from a particular jury on the assumption that the prosecutor is acting on acceptable considerations relating to the case he is trying, the particular defendant involved, and the particular crime charged. *Id.* at 223, 85 S.Ct. at 837. The Court did acknowledge that a constitutional claim of added significance would be presented if it were established that a prosecutor in case after case, whatever the circumstances, whatever the crime, and whoever the defendant or victim might be, was responsible for the removal of Blacks selected as qualified jurors by the jury commission, with the result that no Blacks ever served on petit juries, the purposes of the peremptory challenge being perverted. *Id.* at 223–24, 85 S.Ct. at 837–838. However, in *Swain* no such showing was made.

Nor is such a showing made here. Defendant Jenkins only challenges the Government's conduct in the trial of this case. Defendant does not show any systematic and intentional conduct on the part of the Government calculated to exclude Blacks from juries.[13] Therefore, in light of the holding in *Swain,* we must conclude that no valid claim of an unconstitutional use of the peremptory challenge is established here by defendant Jenkins. *See also United States v. Boykin,* 679 F.2d 1240,

1245 (8th Cir.1982); *Braxton v. Estelle,* 641 F.2d 392, 394–95 (5th Cir.1981); *United States v. Greene,* 626 F.2d 75 (8th Cir.1980), *cert. denied,* 449 U.S. 876, 101 S.Ct. 220, 66 L.Ed.2d 98 (1980); *United States v. Danzey,* 622 F.2d 1065, 1066 (2d Cir.), *cert. denied,* 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980).

AFFIRMED.

which convicted him, through an unconstitutional jury selection system. *See id.* at 495–96 n. 3, 92 S.Ct. at 2164–2165 n. 3. As discussed above, the case at bar deals only with the use of peremptory challenges in the instant case.

---

**13.** Defendant's citation of *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), (Appellant's Brief in Chief at 21), is inapposite. *Peters* dealt with a claim of systematic exclusion of Blacks from both the grand jury which indicted a white defendant and the petit jury