UNITED STATES of America, Plaintiff,

v.

Merle Douglas BARKER, Danny Edgar Hiles, Kim Lincoln Henry, Jean Reagan Odle, Michael Donn Bennett, and Elton Lite Townsend, Defendants.

Crim. A. No. 85 CR 161.

United States District Court, D. Colorado.

Nov. 25, 1985.

824

**828**

Robert N. Miller, U.S. Atty., William D. Welch, Dawn Bowen, Asst. U.S. Attys., Denver, Colo., for U.S.

Arthur S. Nieto, Denver, Colo., for defendant Merle Douglas Barker.

David L. Worstell, Denver, Colo., for defendant Danny Edgar Hiles.

Chris Melonakis, Jeffrey L. Romeo, Northglenn, Colo., Gary G. Colbath, Rapid City, S.D., for defendant Kim Lincoln Henry.

Addison Spike Adams, Denver, Colo., for defendant Jean Reagan Odle.

Louis A. Weltzer, Denver, Colo., for defendant Michael Donn Bennett.

Mitch Geller, Denver, Colo., for defendant Elton Lite Townsend.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge.

This matter is before the Court on several pretrial motions which have been filed by the defendants. An evidentiary hearing was held on July 24, 1985, at which time the Court entered rulings on several of the motions. Those rulings have been expanded upon in this Memorandum Opinion and Order. In addition, orders have been entered nunc pro tunc in the grand jury and suppression motions that the Court took under advisement following the hearing.

The six defendants in this case have been named in a four count indictment charging violations of federal narcotic laws. These include 21 U.S.C. § 846; 21 U.S.C. § 843(b); and 21 U.S.C. § 841(a)(1). The indictment was the result of an extensive investigation conducted by federal and state law enforcement officers. This investigation ultimately resulted in twenty-three defendants being charged in five indictments for drug-related offenses involving cocaine, marijuana, and methamphetamines. Each of the defendants in this case subsequently entered pleas of guilty and have been sentenced.

The following motions will be addressed by the Court:

1. Motions for a Pretrial Hearing Pursuant to *United States v. James;*
2. Motions for Relief from Prejudicial Joinder;
3. Motions for Severance;
4. Motion for Relief from Prejudicial Joinder (Bennett);
5. Motions for Disclosure of Confidential Informants;
6. Motions to Dismiss the Telephone Count;
7. Motions to Dismiss for Preindictment Delay;
8. Motions to Dismiss for Breach of Grand Jury Secrecy;
9. Motion to Dismiss Indictment Based Upon Violation of Rule 6(e) of the Federal Rules of Criminal Procedure;
10. Supplemental Motion to Dismiss Grand Jury Indictment Based Upon Breach of Grand Jury secrecy;
11. Motion to Suppress Search Warrants;
12. Motions to Suppress Wiretaps.

### I

### STANDARDS FOR ADMISSIBILITY OF COCONSPIRATOR STATEMENTS

#### A.

#### Introduction

During recent years, this Court has frequently been called upon to conduct a pre-

trial *"James"* hearing to determine the admissibility of coconspirator statements under Fed.R.Evid. 801(d)(2)(E).[1] In order to assist the bar and the bench, we shall set forth, with some detail, the manner in which this Court determines the admissibility of coconspirator statements. We find that this procedure is fully supported by recent decisions of the Tenth Circuit Court of Appeals. We shall briefly outline this procedure prior to a more complete discussion of the case law.

As set forth below, under certain conditions Rule 801(d)(2)(E) allows hearsay statements of a coconspirator to be admitted against a party at a trial. If the proper foundation is made, then the statements are not considered hearsay under the Federal Rules of Evidence.

The following foundation must be made prior to the admission of the coconspirator statements: (1) that a conspiracy existed; (2) that the declarant and the party against whom the statement is offered were members of that conspiracy; and (3) that the statement was made in the course of and in furtherance of that conspiracy. In this circuit, the court's findings are to be based upon a preponderance of evidence, independent of the statements. If the trial is to a jury, the court's findings must be made on the record. There is no requirement that the court conduct a pretrial hearing to determine the admissibility of the statements, as the court need not make its findings before the trier of fact actually hears the statements. The ultimate order of proof at trial is left to the discretion of the court. Thus, the statements may be "conditionally admitted", subject to being connected to the conspiracy at a later time. The court may postpone any decision as to the admissibility of the statements as evidence to be considered by the trier of fact, until the close of the government's case-in-chief.

## B.

### Is a Pretrial Hearing Required Prior to Admitting Coconspirator Statements?

1. *Determining the Admissibility of Coconspirator Statements*

Rule 801(d)(2)(E) of the Federal Rules of Evidence [2] allows out-of-court statements of a coconspirator to be admitted against a party, if certain criteria are met. Although often referred to as hearsay, if the criteria are met, the coconspirator statements are not hearsay under the Federal Rules of Evidence.

In *United States v. Andrews*, 585 F.2d 961 (10th Cir.1978), the Tenth Circuit established the criteria for admissibility of coconspirator statements under Fed.R. Evid. 801(d)(2)(E). The *Andrews* court held that as a condition for admissibility, the trial court had to consider the coconspirator statement within the context of Rule 104 of the Federal Rules of Evidence.[3] Under this criteria, the government had to establish by evidence, independent of the statements, and the Court had to find, that it was more likely than not that: (1) the conspiracy existed; (2) the declarant and

---

**1.** The defendants have requested a pretrial hearing to determine the admissibility of coconspirator statements under Fed.R.Evid. 801(d)(2)(E). They argue that such a hearing has been approved by *United States v. James*, 590 F.2d 575 (5th Cir.1979) (en banc) and *United States v. Petersen*, 611 F.2d 1313 (10th Cir.1979). For the reasons set forth in part I of this memorandum and order, the Motions for a pretrial hearing pursuant to *United States v. James* are denied. We have concluded that such a hearing is not required by the Tenth Circuit, nor would it assist the Court in determining the admissibility of the statements at issue in this case.

**2.** Fed.R.Evid. 801(d)(2)(E) provides: "(d) A statement is not hearsay if—(2) The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

**3.** Fed.R.Evid. 104 provides in pertinent part: "(a) Preliminary questions concerning the ... admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). (b) When the relevancy of evidence depends upon the fulfillment of a condition or fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

the party against whom the statement is offered were members of that conspiracy; and (3) the statements were made in the course of and in furtherance of that conspiracy.[4]

While *Andrews* established a test to determine the admissibility of coconspirator statements, it did not prescribe a rigid procedure to be followed by the trial court in making this determination. *United States v. Petersen,* 611 F.2d 1313, 1330 (10th Cir. 1979).

Federal courts have followed several procedures in determining the admissibility of coconspirator statements. *See Means v. United States* and *Roth v. United States,* —— U.S. ——, 105 S.Ct. 541, 83 L.Ed.2d 429 (1984) (White, J., dissenting from denial of certiorari); *Arnott v. United States,* 464 U.S. 948, 104 S.Ct. 364, 78 L.Ed.2d 325 (1983) (White, J., dissenting from denial of certiorari). The Sixth Circuit has suggested three methods by which a court can make a preliminary determination of the admissibility of coconspirator statements. *United States v. Vinson,* 606 F.2d 149 (6th Cir.1979), *cert. denied sub nom. Thompson v. United States,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 319 (1980). According to *Vinson,* to make the preliminary finding required by Rule 104, the court may (1) conduct a "mini-hearing", out of the presence of the jury, at which time evidence of the existence of the conspiracy is received, and after which a ruling is made by the court as to the existence of the conspiracy; (2) require the proponent of the evidence to produce non-hearsay evidence prior to making a preliminary finding of the existence of the conspiracy; or (3) conditionally admit the hearsay statements, subject to their being connected to the conspiracy at a later time. *Id.* at 152. As set out more fully below, we conclude that the Tenth Circuit does not require a "mini-hearing" to be held outside of the presence of the jury. Rather, in this circuit, the cocon-

spirator statements may be conditionally admitted by the trial court.

2. *Order of Proof under United States v. James and the James Hearing*

One method of determining the admissibility of the coconspirator statements is that which was adopted by the Fifth Circuit in *United States v. James,* 590 F.2d 575 (5th Cir.1979) (en banc). This method prescribes an order of proof whereby the trial court "whenever reasonably practicable, require[s] the showing of a conspiracy and of the connection of the defendant with it before admitting declarations of a coconspirator." *Id.* at 582. However, if the court determines it is "not reasonably practical to require the showing to be made before admitting the evidence, the court may admit the statement subject to being connected" to the conspiracy. *Id.*

At least one post-*James* case has suggested that a pretrial *James* hearing is required prior to the admission of the coconspirator statements. *See United States v. Grassi,* 616 F.2d 1295, 1300 (5th Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980) (*James* hearing "mandated"). However, other Fifth Circuit decisions have not followed *Grassi. See United States v. Ricks,* 639 F.2d 1305, 1310 (5th Cir.1981) (failure to hold *James* hearing not *per se* reversible error). *See also United States v. Roe,* 670 F.2d 956, 963 (11th Cir.), *cert. denied,* 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982) (district court's failure to hold a *James* hearing, by itself, is not reversible error).

3. *United States v. Petersen—The Tenth Circuit Interprets James*

The order of proof set forth in *James* was considered by the Tenth Circuit Court of Appeals in *United States v. Petersen,* 611 F.2d 1313 (10th Cir.1979). *Petersen* expanded upon the court's earlier ruling in *United States v. Andrews,* 585 F.2d 961

---

**4.** Although issues under Fed.R.Evid. 801(d)(2)(E) most frequently appear in the context of a criminal proceeding, the rule applies to civil actions as well. *See World of Sleep, Inc. v.*

*La-Z-Boy Chair Co.,* 756 F.2d 1467 (10th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985).

(10th Cir.1981) by establishing the following set of rules for determining the admissibility of coconspirator statements. *First,* as recognized in *Andrews,* Rule 104(a) requires the judge, not the jury, to determine the admissibility of the statements. *Second,* generally the trial judge should make a threshold determination of whether or not there is independent evidence of the conspiracy. This *threshold determination* of admissibility, which is made during the initial stages of the proceedings, need only be based upon substantial evidence, rather than a preponderance of the evidence.[5] *Third,* whenever possible, it is preferable to require the government to first establish the existence of the conspiracy and the defendant's connection with the conspiracy prior to the admission of the coconspirator statements. However, if this is not possible, the statements may be conditionally admitted subject to being connected to the conspiracy at a later time.[6] *Fourth* and finally, when all of the evidence has been presented, and upon an appropriate motion, the court must determine whether the government has proven by a preponderance of the evidence[7] independent[8] of the coconspirator's statements "(1) that a conspiracy existed, (2) that the coconspirator and the defendant against whom the statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy". *United States v. Petersen,* 611 F.2d 1313, 1330–31 (10th Cir.1979). *Accord United States v. Pack,* 773 F.2d 261, 265 (10th Cir.1985); *United States v. Metropolitan Enterprises, Inc.,* 728 F.2d 444, 448–49 (10th Cir.1984).

### 4. The Tenth Circuit Interprets Petersen

■ Cases subsequent to *Petersen* have refined these rules. Thus, the *Petersen* order of proof for determining the admissibility of coconspirator statements is to be followed, absent some substantial reason. *United States v. Calabrese,* 645 F.2d 1379 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101

5. As stated by the court in *Petersen,* "substantial independent evidence" is "such evidence as a reasonable mind would accept as adequate to support a conclusion". *United States v. Petersen,* 611 F.2d 1313, 1330 n. 1 (10th Cir.1979). This threshold finding of "substantial evidence" is not to be confused with the requirement that the final determination of the admissibility of the statements be based upon a preponderance of the evidence.

6. Several courts allow the coconspirator statements to be conditionally admitted, before the conspiracy is proven. [If the conspiracy showing is not made before the close of the government's case-in-chief, the court may (1) strike the evidence and give a cautionary instruction, or (2) declare a mistrial] *See United States v. Hewes,* 729 F.2d 1302 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985); *United States v. Winship,* 724 F.2d 1116 (5th Cir.1984); *United States v. Hines,* 717 F.2d 1481 (4th Cir.1983), *cert. denied, sub nom. Bumgardner v. United States,* — U.S. —, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984); *United States v. Miranda-Uriarte,* 649 F.2d 1345 (9th Cir.1981); *United States v. Clark,* 649 F.2d 534 (7th Cir. 1981); *United States v. Vinson,* 606 F.2d 149 (6th Cir.1979), *cert. denied, sub nom. Thompson v. United States,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 319 (1980).

7. There is a conflict between the circuits with respect to the standard of proof to be used to determine the admissibility of coconspirator statements. The Tenth Circuit, along with the majority of circuits, requires a preponderance of the evidence. Some courts have required a showing of substantial evidence before the statements are admitted, while others only require a prima facie case. *See Means v. United States* and *Roth v. United States,* — U.S. —, 105 S.Ct. 541, 542, 83 L.Ed.2d 429 (1984) (White, J., dissenting from denial of certiorari) and *Arnott v. United States,* 464 U.S. 948, 104 S.Ct. 364, 365, 78 L.Ed.2d 325 (1983) (White, J., dissenting from denial of certiorari).

8. There is a split among the circuits with respect to whether evidence of the conspiracy must be established independent of the hearsay statement, before the statement will be admitted. The Sixth Circuit has adopted the approach that the hearsay statement may be relied on to support a finding that a conspiracy did exist. *See United States v. Piccolo,* 723 F.2d 1234, 1240 and n. 1 (6th Cir.1983) (en banc), *cert. denied,* — U.S. —, 104 S.Ct. 2342, 80 L.Ed.2d 817 (1984). All other circuits require independent evidence of the conspiracy. *See Means v. United States* and *Roth v. United States,* — U.S. —, 105 S.Ct. 541, 83 L.Ed.2d 429 (1984) (White, J., dissenting from denial of certiorari) and *Arnott v. United States,* 464 U.S. 948, 104 S.Ct. 364, 78 L.Ed.2d 325 (1983) (White, J., dissenting from denial of certiorari) and cases cited therein.

S.Ct. 3008, 69 L.Ed.2d 390 (1981). However, the ultimate order of proof is left to the discretion of the trial judge. Fed.R. Evid. 611; *United States v. Kaatz*, 705 F.2d 1237 (10th Cir.1983); *United States v. Behrens*, 689 F.2d 154 (10th Cir.), *cert. denied, sub nom. Wilkett v. United States*, 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982). The Tenth Circuit has explicitly held that the trial judge has no obligation to conduct a pretrial hearing to determine the admissibility of the coconspirator statements.[9] *United States v. Monaco*, 700 F.2d 577, 581 (10th Cir.1983). Moreover, as recognized in *Petersen*, it is not always practicable to make a threshold determination of the conspiracy's existence and the defendant's connection to the conspiracy before allowing the jury to hear the statement. In those circumstances, it is well within the court's discretion to conditionally admit the hearsay statements, subject to being connected by additional, independent evidence later in the trial. *United States v. Harenberg*, 732 F.2d 1507, 1513 (10th Cir.1984); *United States v. Petersen*, 611 F.2d 1313, 1330 (10th Cir.1979).

▪ The Tenth Circuit has also held that the *James* and *Petersen* rules apply even where a conspiracy is not formally charged in an indictment, but is proven at trial. *United States v. Alfonso*, 738 F.2d 369 (10th Cir.1984). *See also* Comment, *Federal Rule of Evidence 801(d)(2)(E) Admissibility of Statements From an Uncharged Conspiracy That Does Not Underlie the Substantive Charge*, 52 Fordham L.Rev. 933 (1984).

*Alfonso* also held that in the absence of a specific request during a trial to the court, the trial judge is not required to make findings of facts on the record, with respect to the admissibility of the coconspirator statements. *United States v. Alfonso*, 738 F.2d 369, 371 (10th Cir.1984). However, these findings of facts should be made on the record during a jury trial. *Id.*

It appears clear from our review of the Tenth Circuit case law, and other persuasive authority, that a pretrial determination of the admissibility of coconspirator statements is not required. Where the government has provided a defendant with full discovery, that defendant will be well aware of any statements which may be offered against him at trial. In those circumstances, we conclude that a defendant would not be prejudiced in the preparation of a defense if a pretrial hearing is not held, nor would such a hearing expedite the proceedings.

5. *Determining the Admissibility of Acts of a Coconspirator*

▪ Defendants have also asked that we determine the admissibility of acts of a coconspirator in the same manner as we consider the admissibility of statements of coconspirators. To the extent that the acts of a coconspirator are nonverbal conduct intended as an assertion, they are statements within the meaning of Fed.R.Evid. 801(a)(2)[10] and would be treated accordingly. *Accord United States v. Andrews*, 585 F.2d 961, 964, 966 (10th Cir.1978) (acts and declarations of one coconspirator are admissible against another; evidence of the acts and statements of other coconspirators may be admitted pursuant to Fed.R.Evid. 801(d)(2)(E)).

**9.** There appears to be agreement among the circuits that a pretrial hearing, while preferable, is not required before coconspirator statements will be admitted. *See Means v. United States* and *Roth v. United States*, —— U.S. ——, 105 S.Ct. 541, 542 n. 3, 83 L.Ed.2d 429 (1984) (White, J., dissenting from denial of certiorari). Such a position also seems to be supported by Fed.R.Evid. 104(c) which provides that hearings on the admissibility of preliminary matters may be held in the presence of the jury, unless the interests of justice require otherwise. However, the Eleventh Circuit has cautioned the district court not to lightly forego the advantages of a *James* hearing. Such a hearing reduces the chances of a mistrial and the risk that the jury will hear inadmissible testimony. *United States v. Roe*, 670 F.2d 956, 962 n. 2 (11th Cir.), *cert. denied*, 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982).

**10.** Fed.R.Evid. 801(a) provides: "Statement. A statement is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended as an assertion."

## C.

### Coconspirator Statements and the Confrontation Clause

■ Although statements of coconspirators may be admissible under Fed.R.Evid. 801(d)(2)(E), the sixth amendment's confrontation clause may preclude the admission of the statements. *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980); *Dutton v. Evans*, 400 U.S. 74, 80, 91 S.Ct. 210, 215, 27 L.Ed.2d 213 (1970). *See also United States v. Alfonso*, 738 F.2d 369, 372 (10th Cir.1984) (per curiam) (confrontation clause and hearsay rules have not been equated); *United States v. Young*, 736 F.2d 565, 568–69 (10th Cir.1984), *rev'd on other grounds*, —— U.S. ——, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), ("[d]espite the evidentiary propriety of the admission of statements [under Fed.R.Evid. 801(d)(2)(D)], there remains the issue of whether the receipt of such testimony deprived Appellant of his Sixth Amendment right to confront witnesses testifying against him".).

Relying on the Third Circuit's ruling in *United States v. Inadi*, 748 F.2d 812, 818 (3rd Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 2653, 86 L.Ed.2d 271 (1985), we have been urged to require the government to show that a nontestifying coconspirator is unavailable to testify as a foundation for admitting that coconspirator's out-of-court statements under Rule 801(d)(2)(E). Such a foundation has also been required by the Second Circuit, *United States v. Wright*, 588 F.2d 31, 37–38 (2d Cir.1978), *cert. denied*, 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 467 (1979); the Fourth Circuit, *United States v. Lisotto*, 722 F.2d 85 (4th Cir.1983), *cert. denied*, 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 157 (1984); the Eighth Circuit, *United States v. Massa*, 740 F.2d 629, 638–40 (8th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); and the Ninth Circuit, *United States v. Echeverry*, 759 F.2d 1451, 1457–58 (9th Cir.1985); *United States v. Ordonez*, 722 F.2d 530 (9th Cir.1983), *modified*, 737 F.2d 793 (9th Cir.1984). *But see Ohio v. Roberts*, 448 U.S. 56, 65 n. 7, 100 S.Ct. 2531, 2538 n. 7, 65 L.Ed.2d 597 (1980) (suggesting that a demonstration of unavailability is not always required); *Dutton v. Evans*, 400 U.S. 74, 87, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) (no violation of the confrontation clause as the evidence was not crucial to the prosecution nor devastating to the defense); *United States v. Inadi*, 748 F.2d 812, 818 n. 4 (3rd Cir.1984) (where court notes suggestion in *Roberts* and *Dutton* that a demonstration of unavailability may not be required where the "utility" of trial confrontation is "so remote that it [does] not require the prosecution to produce a seemingly available witness".)

■ The Tenth Circuit has interpreted *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) as establishing a two-pronged test for determining whether the admission of hearsay statements will violate a defendant's rights under the confrontation clause. *Ewing v. Winans*, 749 F.2d 607 (10th Cir.1984). *First*, the government must produce, or demonstrate the unavailability of, the hearsay declarant. *Second*, if the declarant is unavailable, the government must then establish the trustworthiness of the hearsay statement. *Id.* at 612. Thus, "when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that [the declarant] is unavailable". *United States v. Kapnison*, 743 F.2d 1450, 1459 (10th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2017, 85 L.Ed.2d 299 (1985). If the hearsay declarant is unavailable, the government has the burden to show a good faith effort was made to obtain the witness' presence at trial. *Valenzuela v. Griffin*, 654 F.2d 707, 709 (10th Cir.1981) (per curiam).

*United States v. Alfonso*, 738 F.2d 369 (10th Cir.1984) (per curiam) is not dispositive of this issue. In *Alfonso*, the court rejected the defendant's argument that his right to confront witnesses against him had been violated by the admission of an unavailable coconspirator's hearsay statements. However, in *Alfonso*, there was no issue as to whether the declarant was actu-

ally unavailable. The court simply stated that the declarant was unavailable and then went on to discuss whether the statements were reliable. It concluded that the statements were reliable and thus had been properly admitted at trial. *Id.* at 372.

If the government attempted to introduce statements of an unavailable coconspirator at a trial, we would determine the admissibility of those statements under the test outlined in *Ewing v. Winans,* 749 F.2d 607 (10th Cir.1984). This would require the government to show that a good faith effort was made to obtain the witness' presence and that the hearsay statements were trustworthy. *Id.* at 612.

## II

### SEVERANCE

### A.

Federal Rule of Criminal Procedure 14

All defendants have moved this Court for severance pursuant to Fed.R.Crim.P. 14. They argue that if they are tried together, the disparity of the quality and quantity of evidence against the individual defendants would result in prejudice to them and would therefore deny them a fair trial. Rule 14 allows a court to order a severance of defendants if it appears that a defendant will be prejudiced by a joint trial.

 The general rule is that defendants who allegedly participate in a criminal act and are then charged in the same indictment can be tried together. Fed.R.Crim.P. 8(b); *United States v. Dill,* 693 F.2d 1012, 1014 (10th Cir.1982). A Rule 14 motion for severance is addressed to the sound discretion of the trial court. *Id.* at 698; *United States v. Beathune,* 527 F.2d 696 (10th Cir.1975), *cert. denied,* 425 U.S. 996, 96 S.Ct. 2211, 48 L.Ed.2d 821 (1976). In order to obtain severance, the defendants must show that prejudice would result from a joint trial. *United States v. Espinosa,* 771 F.2d 1382, 1407 (10th Cir.1985); *United States v. Falcon,* 766 F.2d 1469 (10th Cir. 1985); *United States v. Hines,* 696 F.2d 722 (10th Cir.1982); *United States v. Dill,*

693 F.2d 1012, 1014 n. 2 (10th Cir.1982). When determining whether to grant a motion for severance, we must weigh the prejudice caused by the joinder against considerations of economy and expedition in judicial administration. *Id.* at 1014, n. 2; *United States v. Walton,* 552 F.2d 1354 (10th Cir.), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977). Factors to be considered include whether a jury will be able to compartmentalize the evidence and whether jury instructions will adequately minimize any confusion on the part of the jurors. *United States v. Hines,* 696 F.2d 722, 732 (10th Cir.1982). With these factors in mind, it does not appear to the court at this stage of the proceedings that the defendants will be prejudiced by a joint trial.

 Defendants have simply contended that a disparity of evidence will deny them a fair trial. However, the mere allegation of a disparity of evidence is insufficient to warrant severance. The Tenth Circuit has stated that "the fact that the prosecution may have a stronger case against one defendant than against a codefendant does not entitle the latter to a separate trial." *United States v. Espinosa,* 771 F.2d 1382, 1409 (10th Cir.1985). *Accord United States v. Dill,* 693 F.2d 1012, 1014 (10th Cir.1982). Also, the mere fact that severance might improve a defendant's chance for acquittal does not mandate severance. *United States v. Hines,* 696 F.2d 722, 732 (10th Cir.1982); *United States v. Heath,* 580 F.2d 1011 (10th Cir.1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979). In the absence of a showing of prejudice, Rule 14 severance will not be granted, where as here, the indictment charges that the defendants were allegedly working together. *United States v. Beathune,* 527 F.2d 696, 697, 698 (10th Cir.1975), *cert. denied,* 425 U.S. 996, 96 S.Ct. 2211, 48 L.Ed.2d 821 (1976).

 In support of their motion, the defendants rely on *United States v. Mardian,* 546 F.2d 973 (D.C.Cir.1976). However,

in *Mardian*, severance was initially denied when the only argument before the court was disparity of evidence. It was only later, during the course of the trial, that other factors, such as the illness of defense counsel, required that a severance be granted. Other cases cited by defendants also do not support their contention that a disparity of evidence in this case mandates severance. In *United States v. Donaway*, 447 F.2d 940 (9th Cir.1971), it was determined that joinder under Rule 8(b) was improper because the government had not charged the conspiracy in good faith. Rather, it had been used in an effort to join Donaway. Once the conspiracy count had been dropped, it was then determined that the disparity of evidence would probably be prejudicial to Donaway and the severance was proper. Similarly, in *United States v. DeRosa*, 670 F.2d 889 (9th Cir.1982), the count which formed the original basis for joinder was dismissed. However, the court went on to determine that the defendants had not been prejudiced by a joint trial.

As stated earlier, defendants have only made a general allegation that they will be prejudiced by a joint trial because of a disparity of evidence. Without more, we cannot conclude that the defendants will be so prejudiced by a joint trial that Rule 14 severance should be granted. Accordingly, the Motions for Relief from Prejudicial Joinder and the Motions for Severance are DENIED.

### B.

Federal Rule of Criminal Procedure 8(b)

Additionally, defendant Bennett has moved for severance pursuant to Fed.R. Crim.P. 8(b). Relying on the same disparity of evidence argument presented above, he argues that joinder is improper under Rule 8(b).

■ Rule 8(b) allows the government to join defendants who are alleged to have participated in the same act or transaction

or in the same series of acts or transactions which constitute an offense. *United States v. Hines*, 696 F.2d 722, 732 (10th Cir.1982). Bennett has been charged in Count I of the indictment with a violation of 21 U.S.C. § 846. Absent some showing that this conspiracy has been charged in bad faith, or some other unusual circumstance, Rule 8(b) joinder is proper. *See United States v. Donaway*, 447 F.2d 940, 943 (9th Cir.1971); *United States v. Manfredi*, 275 F.2d 588 (2d Cir.), *cert. denied*, 363 U.S. 828, 80 S.Ct. 1599, 4 L.Ed.2d 1523 (1960). There has been no such showing here. Furthermore, as discussed above, Bennett has made no showing that severance is required under Rule 14. He has not indicated with specificity how he would be prejudiced by a joint trial with his codefendants.[11] *See United States v. Hines*, 696 F.2d 722, 732 (10th Cir.1982). Therefore, defendant Bennett's Motion for Relief from Prejudicial Joinder is also DENIED.

### III

### MOTIONS FOR DISCLOSURE OF CONFIDENTIAL INFORMANTS

Each of the defendants has filed a Motion for Disclosure of Confidential Informants wherein they seek to obtain the names and addresses of any informants used by the government. In addition, the defendants request the criminal records of the informants, any inducements they or their family members were offered and/or received, threats, if any, which were made to the informants or their family members, and any other information which may impact upon the credibility of the informants. The defendants argue that this information is material to the preparation of their cases and that its disclosure is necessary to afford them a fair trial.

The government has taken the position that disclosure is not warranted under the facts of this case. According to the

---

**11.** In some circumstances, a defendant with a limited role in his codefendants' activities may be prejudiced by a joint trial. *See United States*

*v. DeRosa*, 670 F.2d 889, 899 n. 14 (9th Cir. 1982).

government: (1) at no time during the investigation did any of the informants become involved in any criminal activities with these particular defendants; (2) the informants were not present during the execution of the search warrant on April 18, 1984; (3) the government does not intend to call the informants to testify at the hearing on the pretrial motions or at trial; and (4) the informants were not involved in the investigation of any of the alleged criminal activities for which the defendants were indicted.

The affidavits in support of the various search warrants which were issued in this case state that each of the informants had purchased drugs from at least one of the primary targets in the investigation: Pat Sharkey, Tim Davis or Daniel Davis. These targets are not named as defendants in the case currently before the Court. The affidavits also state that the informants had discussed or had been present when the targets were discussing their drug operations. Finally, the affidavits state that the reliability of the informants had been established through wire and oral interceptions and surveillance of Dan Davis, Tim Davis, Pat Sharkey, and defendant Kim Lincoln Henry.

In *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court recognized that disclosure of an informant's identity may be necessary in order to protect a defendant's right to a fair trial. Under *Roviaro,* the government must disclose an informant's identity when the informant actively participated and/or was a percipient witness to the underlying act or transaction which formed the basis for the indictment. *Id.* at 63–65, 77 S.Ct. at 629–30; *United States v. Halbert,* 668 F.2d 489 (10th Cir.), *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982). However, disclosure need not be made where the informant's involvement was limited to providing information relevant to the issue of probable cause. *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

The Tenth Circuit has recognized that disclosure of an informant may be required where the informant has testimony which may be helpful to the defendant. However, the defendant must do more than speculate as to the content of that testimony. *United States v. Burrell,* 720 F.2d 1488, 1494 n. 8 (10th Cir.1983); *United States v. Halbert,* 668 F.2d 489, 495, (10th Cir.), *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982). Disclosure of an informant's identity is not warranted where the informant is not a witness at trial. *United States v. Dyba,* 554 F.2d 417 (10th Cir.), *cert. denied,* 434 U.S. 830, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977).

In the present case, it appears that the informants only provided initial, introductory information to the government agents. While this information was relevant to the determination of probable cause and the issuance of the search warrants, it does not facially appear that the informants were active participants in the crimes charged in this indictment. Furthermore, the government has represented that the informants will not be called to testify at trial. Under these circumstances, we conclude that disclosure of the informants' identities is not warranted. Accordingly, the Motions for Disclosure of Confidential Informants are DENIED.

## IV

### MOTIONS TO DISMISS THE TELEPHONE COUNT

Several of the defendants have been charged with the unlawful use of a telephone to facilitate the commission of a crime, in violation of 21 U.S.C. § 843(b). They argue that the indictment with respect to this charge is insufficient, in that it fails to identify the telephone facility used, its location, the nature and content of any statements attributed to the defendants, and other facts which would enable them to plead double jeopardy with respect to any future indictments. As such, they have moved to dismiss the indictment.

It is not necessary to allege the exact date and location of a telephone call in an indictment charging a violation of 21 U.S.C. § 843(b). *United States v. Rodriguez*, 546 F.2d 302 (9th Cir.1976). In this circuit, an indictment is generally sufficient so long as it sets forth, in the words of the statute and without any ambiguity, the elements necessary to constitute an offense. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Irwin*, 654 F.2d 671, 681 (10th Cir.1981). Any other details would fall into the category of evidence on which the case would rest, and the indictment is not obliged to state this evidence. *United States v. Radetsky*, 535 F.2d 556 (10th Cir. 1976). The defendants have received full discovery in this matter, including transcripts of all the telephone conversations which form the basis for the charges in the indictment. The indictment, together with the record evidence of exhibits and testimony affords protection against any future prosecution on these same charges. *Id.* at 563. Therefore, the Motions to Dismiss the Telephone Count are *DENIED*.

## V

## SPEEDY TRIAL MOTIONS

### A.

### Speedy Trial Act

Several of the defendants have contended that their rights under 18 U.S.C. § 3161(b) have been violated and therefore, pursuant to 18 U.S.C. § 3162(a)(1), the present indictments must be dismissed. Section 3161(b) of the Speedy Trial Act provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which each individual was arrested or served with a summons in connection with such charges". Sanctions for a violation of § 3161(b) can be found in § 3162(a)(1). If an indictment or information is not filed within the thirty-day period, then the charges are to be dropped. The statute sets forth several factors to be used to determine if the dismissal will be with or without prejudice.

For purposes of these motions, the government and defendants have stipulated to the following facts. On April 18, 1984, at approximately 6:00 a.m., the premises located at 2084 East 115th Avenue, Northglenn, Colorado, were searched by federal and state law enforcement officers, pursuant to a federal search warrant. Defendants Barker, Hiles, and Bennett were present when the search warrant was executed. Barker was apprehended as he attempted to escape from the premises. All three defendants were advised of their rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Bennett was released from custody before the search was conducted. Following the search, Barker and Hiles were taken to the Northglenn Police Station and were later transported to the Lakewood Department of Public Safety. While at the Lakewood Department of Public Safety, Barker and Hiles were photographed and fingerprinted. Hiles was released from custody at 12:45 p.m., and Hiles was released about one hour later, at 1:45 p.m.

There were no state charges filed against the defendants as a result of the search and subsequent arrests, nor was a federal complaint ever filed against defendants. A grand jury indictment was returned on May 10, 1985. Shortly thereafter, the defendants made an initial appearance before the United States Magistrate and were later arraigned.

The defendants contend that they were arrested on April 18, 1984. As such, the indictment in this case was filed over a year later, in violation of their rights under the Speedy Trial Act. However, the provisions of the Speedy Trial Act do not come into play until there has been a formal federal charge filed against a defendant. *United States v. Stead*, 745 F.2d 1170 (8th Cir.1984); *United States v. Janik*, 723 F.2d 537 (7th Cir.1983); *United States v. Sanchez*, 722 F.2d 1501, 1502 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984); *United States v. Alfar-*

*ano,* 706 F.2d 739 (6th Cir.), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *United States v. Candelaria,* 704 F.2d 1129 (9th Cir.1983); *United States v. Smith,* 704 F.2d 723 (4th Cir.1983); *United States v. Dryniciki,* 689 F.2d 289 (1st Cir. 1982); *United States v. Wilson,* 657 F.2d 755 (5th Cir.1981); *United States v. Hillegas,* 578 F.2d 453 (2d Cir.1978). In the present case, there were no federal charges filed against the defendants until the indictment was returned against them on May 10, 1985. Therefore, there has been no violation of the Speedy Trial Act.

### B.

Sixth Amendment Right to Speedy Trial

There has also been no violation of the defendants' rights to a speedy trial under the sixth amendment. The sixth amendment guarantee of a speedy trial does not attach to the period of time preceding a defendant's indictment. *United States v. Pino,* 708 F.2d 523, 527 n. 5 (10th Cir.1983); *United States v. Jenkins,* 701 F.2d 850, 854 n. 4 (10th Cir.1983); *United States v. Beitscher,* 467 F.2d 269, 272 (10th Cir.1972). As stated above, defendants were not indicted until May 10, 1985. Moreover, the search of their home in April 1984 and subsequent arrest by state law enforcement officials were insufficient to trigger the provisions of the sixth amendment. *See United States v. Jenkins,* 701 F.2d 850, 854 n. 4 (10th Cir.1983).

Furthermore, defendants have made no showing that they have been prejudiced by any delay in this matter. Courts have been reluctant to find a sixth amendment violation in the absence of any prejudice. *Id.* at 857. This is in contrast to a defendant's rights under the Speedy Trial Act, which do not require a showing of prejudice to the defendant. *United States v. Scalf,* 760 F.2d 1057, 1059 n. 2 (10th Cir.1985).

### C.

The Fifth Amendment and
Preindictment Delay

Defendants have argued that they have been prejudiced by the delay of almost a year between their arrest and the return of the indictment in this matter. Although not expressly stated by defendants, it appears they are making an argument under the due process clause of the fifth amendment.

Whereas the Speedy Trial Act and the sixth amendment's guarantee of a speedy trial apply to post-indictment delays, the due process clause of the fifth amendment protects against preindictment delays. *United States v. Lovasco,* 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752, *reh'g denied,* 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977); *United States v. Marion,* 404 U.S. 307, 313–20, 92 S.Ct. 455, 459–463, 30 L.Ed.2d 468 (1971). The Tenth Circuit has developed a two-part test in order to determine whether a pre-indictment delay has violated a defendant's due process rights. Under this test, the defendant must show that (1) there was actual prejudice resulting from the delay and (2) the delay was purposefully designed to gain tactical advantage or to harass the defendant. *United States v. Pino,* 708 F.2d 523, 527 (10th Cir.1983); *United States v. Jenkins,* 701 F.2d 850, 854 (10th Cir.1983); *United States v. Gutierrez,* 696 F.2d 753 (10th Cir.1982); *United States v. Revada,* 574 F.2d 1047, 1048 (10th Cir. 1978); *United States v. Beitscher,* 467 F.2d 269, 272 (10th Cir.1972).

The defendants have not set forth any facts which would indicate to the Court that they have been prejudiced by the one-year delay. A general allegation of prejudice due to the passage of time or the absence of witnesses is not sufficient for purposes of establishing preindictment delay. Defendants must show definite and not speculative prejudice. *United States v. Pino,* 708 F.2d 523, 527 (10th Cir.1983). If the delay has resulted in the absence of a witness, defendant must state, in specific terms, how that witness would have been of assistance in preparation of his defense. *United States v. Jenkins,* 701 F.2d 850, 855 (10th Cir.1983).

Defendants have also made no allegations that the government used the delay to harass the defendants or to gain a tactical advantage in the case. Moreover, the evidence before the Court does not support such a conclusion.

In conclusion, defendants have not been able to meet the two-part test for preindictment delay. Therefore, there has been no violation of their rights under the due process clause of the fifth amendment.

For the reasons stated above, defendants' Motions to Dismiss for PreIndictment Delay are DENIED.

## VI

## MOTIONS TO DISMISS FOR BREACH OF GRAND JURY SECRECY

Defendants have alleged several breaches of grand jury secrecy. Because we conclude there has been no breach of secrecy in violation of Fed.R.Crim.P. 6(e), the motions are DENIED.

### A.

Motion to Dismiss Indictment Based Upon Violation of Rule 6(e) of the Federal Rules of Criminal Procedure/Supplemental Motion to Dismiss Grand Jury Indictment Based Upon Breach of Grand Jury Secrecy

These cases involved a joint, federal-state investigation into violations of various drug laws. During the course of the investigation, two officers of the Lakewood Department of Public Safety, Ray Knott and Gina Morelli, were deputized as Special United States Marshals, pursuant to 28 C.F.R. § 0.112. The facts surrounding their involvement in these cases are undisputed.

Agents Knott and Morelli are experienced, state law enforcement officers. Agent Knott has sixteen years of law enforcement experience and Agent Morelli has seven years of experience. Agent Morelli was involved in this investigation from its inception. She obtained the initial state search warrants which authorized the installation of pen registers and receipt of subscriber information on the telephones used by defendant Kim Lincoln Henry, Tim Davis, and Pat Sharkey. Agent Morelli was also one of the affiants on the affidavit for the wire and oral interceptions which were conducted in this case. Agent Knott was the affiant on the affidavits submitted in support of the search warrant which was executed on April 18, 1984.

Agents Knott and Morelli were deputized on three different occasions—January 1984, June 1984, and June 1985. The authenticity of these deputizations has not been challenged by any of the defendants.

As Special United States Deputy Marshals, Knott and Morelli performed a variety of law enforcement tasks. These included interviewing witnesses, delivering grand jury subpoenas, preparation of grand jury exhibits, arresting defendants, and monitoring the wiretaps which had been authorized by this Court. Agent Morelli also testified before the federal grand jury. Both agents remained on the payroll of the Lakewood Department of Public Safety during their tenure as special deputies. However, any overtime pay they earned was paid by the Drug Enforcement Administration of the Department of Justice.

At the request of the Assistant United States Attorney who was conducting the grand jury investigation into these matters, both agents reviewed transcripts of the testimony given by Daniel Davis, Pat Sharkey, and Tim Davis. These witnesses were targets of the grand jury investigation and had previously given detailed statements to Knott and Morelli. The agents were requested to review the testimony to compare it with these earlier statements. The transcripts were reviewed at the offices of the Assistant United States Attorney. There were no copies made of the transcripts, nor were the agents allowed to take notes of the contents of the transcripts. There is no evidence that the contents of those transcripts were revealed to other persons.

The defendants' argument that a breach of grand jury secrecy occurred is twofold. *First,* they contend that state law enforce-

ment officers are not "government personnel" within the meaning of Rule 6(e). *Second*, they argue that the mere deputization of state officers does not automatically make them "government personnel" within the meaning of Rule 6(e), because the role of a United States Deputy Marshal is ministerial and not investigative.

Rule 6(e)(3)(A)(ii) of the Federal Rules of Criminal Procedure allows disclosure of matters occurring before the grand jury to "such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law". It is clear that without the special deputization, disclosure of the grand jury transcripts to Agents Knott and Morelli would have been a violation of the Rule 6(e). *See In Re: Miami Federal Grand Jury No. 74–7*, 478 F.Supp. 490, 492–93 (S.D.Fla.1979) (state police officers are not "government personnel" within the meaning of Rule 6(e)); *In Re: Grand Jury Proceedings*, 445 F.Supp. 349, 350 (D.R.I.1978), *dismissed on other grounds*, 580 F.2d 13 (1st Cir.1978) (state law enforcement detectives are not "government personnel").[12]

However, we are of the opinion that as Special United States Deputy Marshals, Agents Knott and Morelli were "government personnel" within the meaning of Rule 6(e)(3)(A)(ii) and therefore disclosure of the transcripts did not violate Rule 6(e). *Accord United States v. Robert Hakel*, No. 84–CR–293, (D.Colo., Apr. 4, 1985) (Moore, J.). Although the term "government personnel" is not limited to permanent civil service employees of the United States, *United States v. Lartey*, 716 F.2d 955, 964 (2nd Cir.1983), the United States Marshal does not have free reign to deputize any private citizen. The United States Marshal's authority to authorize Special Depu-

ties is limited to selected officers and employees of the United States and to select state or local law enforcement officers. 28 C.F.R. § 0.112.

*United States v. Tager*, 638 F.2d 167 (10th Cir.1980) does not control in this matter. In *Tager*, disclosure was made to an employee of a non-profit organization known as the Insurance Crime Prevention Institute (ICPI). The ICPI was funded by insurance companies for the purpose of aiding law enforcement and prosecution of perpetrators of insurance fraud. *Id.* at 710. Under those circumstances, disclosure was made to non-government personnel. Such is not the case here, where the agents were properly deputized.

■ Finally, even if we were to find that there had been some breach of the grand jury's secrecy, dismissal of the indictment is not required. Dismissal of the indictment is warranted only where there is "a showing that there was such an abuse of the grand jury process that any substantial rights of the defendant were impaired or the integrity of the grand jury proceedings was impugned". *United States v. Phillips*, 664 F.2d 971, 1044 (5th Cir.1981); *United States v. Malatesta*, 583 F.2d 748 (5th Cir.1978), *reh'g en banc*, 590 F.2d 1379, *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979). *Accord United States v. Pino*, 708 F.2d 523 (10th Cir. 1983); *United States v. Kilpatrick*, 594 F.Supp. 1324 (D.Colo.1984); *United States v. Anderson*, 577 F.Supp. 223 (D.Wyo. 1983). In the absence of such a showing, any violation of Rule 6(e) can be adequately enforced by a contempt citation. Fed.R. Crim. 6(e)(2); *United States v. Malatesta*, 583 F.2d 748, 753 (5th Cir.1978). *See also United States v. Cardall*, 773 F.2d 1128, 1134 (10th Cir.1985) ("[o]rdinarily the secrecy rule is enforced by the sanction specifically provided in the rule—punishment for

---

**12.** The government has argued that the amended Fed.R.Crim.P. 6(e)(3)(A), which became effective August 1, 1985, is dispositive of this issue. The amended Rule provides that disclosure may be made to "(ii) such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal law". Because the alleged breaches of secrecy occurred prior to August 1, 1985, the amended rule is inapplicable to this situation.

contempt of court"). Defendants have made no showing, nor have they even argued, that any substantial right was violated by the disclosure of the testimony to Agents Knott and Morelli.

Therefore, defendants' Motion to Dismiss the Grand Jury Indictment Based upon Breach of Grand Jury Secrecy and Supplemental Motion to Dismiss are *DENIED.*

### B.

### Motion to Dismiss the Grand Jury Indictment Based Upon Breach of Grand Jury Secrecy

■ The defendants also contend that the indictment in this case should be dismissed because the grand jury secrecy was breached when court reporters had their tapes transcribed by individuals who were not sworn to secrecy. The defendants do not contend that the transcripts contained any inaccuracies or that they were prejudiced in any way by the manner in which the tapes were transcribed.

Testimony at the hearing established that Eileen Carpenter & Associates, Inc. has an exclusive contract with the United States Attorney for the District of Colorado to record federal grand jury proceedings. Ms. Carpenter testified that she is fully aware of the provisions of Rule 6 and that each of her reporters has also been instructed about the provisions of the rule.

The certifications on the grand jury transcripts of testimony taken before the grand jury in this investigation show that nine of Ms. Carpenter's associates took testimony before Grand Jury 84–2. While most of the reporters prepared their own transcripts, two of the reporters used the services of another company in preparing their transcripts. This company would transform the reporters' computerized discs into readable transcripts. The company employed drivers to transport transcripts to Ms. Carpenter at her office. All tran-

scripts were transported in sealed envelopes, and there is no evidence that any envelopes arrived at their destination unsealed. Ms. Carpenter testified that the use of the computerized discs lessened the chance that grand jury testimony would be disclosed improperly or inadvertently.

It is the custom within the District of Colorado for court reporters who record grand jury proceedings to take an oath of secrecy. This oath is not specifically mandated by Rule 6(e). Rather, Rule 6(e)(2) expressly imposes an obligation of secrecy on court reporters and typists who transcribe the proceedings.[13] At the hearing, evidence was presented which showed that some of the court reporters had not taken the oath for this particular grand jury (84–2). However, each had been sworn for past grand juries and affidavits submitted by the reporters show that it was their understanding that a single oath applied to subsequent grand juries.

Employees of the firm which subcontracted to transcribe the grand jury proceedings were required to obtain an FBI clearance prior to their employment. They were also instructed to take the oath which was given to the court reporters, although it appears that through inadvertence some of the employees had not done so. Based upon this evidence, we do not find that there has been any breach of grand jury secrecy which would amount to a violation of Rule 6(e). Although some of the persons involved in the preparation of these transcripts had not taken the oath required in this district, such an oath is not mandated by Rule 6. In our view, the oath merely insures that persons who obtain information from a grand jury proceeding are aware of their obligations under Rule 6. It appears to the Court that employees of both companies had been appropriately instructed with respect to the requirement that grand jury proceedings remain secret and to the confidentiality of the transcripts.

---

**13.** Federal Rule of Criminal Procedure 6(e)(2) provides in pertinent part, "(2) General Rule of Secrecy. [A] stenographer, an operator of a recording device, a typist who transcribes re-

corded testimony ... shall not disclose matters occurring before the grand jury, except as otherwise provided in these rules".

Significantly, defendants have not shown that disclosure was made to anyone other than the court reporters and persons assisting them in the transcription of their tapes. As noted, transcripts were delivered in sealed envelopes to Ms. Carpenter. She in turn delivered the transcripts to a designated person in the United States Attorney's office. Any additional copies of transcripts were shredded.

Furthermore, defendants have not shown that any of their rights were violated or that the integrity of the grand jury proceedings were so impugned as to require dismissal of the indictment. *See United States v. Phillips*, 664 F.2d 971, 1044 (5th Cir.1981). In the absence of such a showing, the only remedy for a breach of grand jury secrecy is contempt. Fed.R.Crim.P. 6(e)(2).

We find that there was no breach of grand jury secrecy due to the manner in which the tapes were transcribed or in the handling of the transcripts, nor do we find that defendants have suffered any prejudice in this regard. As such, the Motion to Dismiss the Grand Jury Indictment Based upon Breach of Grand Jury Secrecy is DENIED.

## VII

### MOTION TO SUPPRESS SEARCH WARRANTS

On April 17, 1984, Magistrate Royce Sickler signed ten search warrants which authorized federal and state officials to search several residences and other locations for evidence of violations of federal narcotics laws. One of the residences which was searched was located at 2084 East 115th Avenue, Northglenn, Colorado. Defendants Hiles and Barker had recently moved to this residence. Defendant Bennett was a visitor at the home.

Pursuant to this warrant, a search of the premises was conducted on April 18, 1984 and numerous items of contraband were seized. At the time of the search, defendants Hiles, Barker, and Bennett were found in the home. They now argue that the search of the residence was illegal because there was no probable cause in the affidavit in support of the search warrant to establish that any contraband or other evidence of illegal activity would be found in the residence.

When determining whether to issue a search warrant, the magistrate "is to make a common sense decision, whether, given all the circumstances set forth in the affidavit, .... there is a fair probability that contraband or evidence of a crime will be found in a particular place". *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Cardall*, 773 F.2d 1128, 1131 (10th Cir., 1985). In making this determination of probable cause, the magistrate may consider facts contained in related affidavits. *United States v. Berisford*, 750 F.2d 57 (10th Cir. 1984).

The government contends that under the *Gates'* "totality of the circumstances" analysis, there was probable cause to support the issuance of the search warrant for the East 115th Avenue residence. As the government points out, the affidavit in support of the search warrant incorporated by reference the affidavits filed in support of searches at three other residences. Six other affidavits were also presented to the magistrate for searches of storage facilities and safety deposit boxes.

Each of these affidavits described a joint, federal-state investigation of narcotics trafficking in the Lakewood, Colorado area, which began in September of 1983. The affidavits chronicle corroborated information, surveillance, trash searches, and conversations which had been intercepted through court-approved electronic surveillances. The wire interceptions identified defendants Barker and Hiles as associates of Tim Davis, Pat Sharkey, and defendant Kim Lincoln Henry. During these phone conversations, the parties used code names and spoke of drug transactions using code terms. Barker and Hiles were seen meeting with other associates of Henry and Davis on several occasions.

A reading of the affidavits clearly supports a finding that there was probable cause to believe Hiles and Barker were involved in drug transactions. However, we cannot agree that there was probable cause to search their residence.

The Supreme Court has made clear that "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought". *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 1976, 56 L.Ed.2d 525 (1978). In making the distinction between probable cause to arrest and probable cause to search, the Court stated:

It does not follow, however, that probable cause for arrest would justify the issuance of a search warrant, or on the other hand, that probable cause for a search warrant would necessarily justify an arrest. Each requires probabilities as to somewhat different facts and circumstances—a point which is seldom made explicit in the appellate cases.... This means, for one thing, that while probable cause for arrest requires information justifying a reasonable belief that a crime has been committed and that a particular person committed it, a search warrant may be issued on a complaint which does not identify any particular person as the likely offender ... [citation omitted].

Two conclusions necessary to the issuance of the warrant must be supported by substantial evidence: that the items sought are in fact seizable by virtue of being connected with criminal activity, and that the items will be found in the place to be searched. By comparison, the right of arrest arises only when a crime is committed or attempted in the presence of the arresting officer or when the officer has "reasonable grounds to believe"—sometimes stated "probable cause to believe"—that a felony has been committed by the person to be arrested. Although it would appear that the conclusions which justify either arrest or the issuance of a search warrant must be supported by evidence of the same degree of probity, it is clear that the conclusions themselves are not identical.

In the case of arrest, the conclusion concerns the guilt of the arrestee, whereas in the case of search warrant the conclusions go to the connection of the items sought with crime and to their present location. [Citation omitted].

*Id.* at 556–57 n. 6, 98 S.Ct. at 1976–77 n. 6.

In the present case, the facts in the affidavit are primarily directed toward Tim Davis, Dan Davis, Pat Sharkey, and defendant Kim Lincoln Henry. Page 7 of the affidavit states that defendants Hiles and Barker were identified through wire interceptions as being associates of these parties. The affidavit then sets forth details about several phone conversations and personal meetings between these parties from February 24, 1984 through April 12, 1984. While the conversations appear to relate to drugs, there is nothing in the conversations which indicate any contraband or drug related items would be found at the East 115th Avenue residence. At one point, on April 5, 1984, officers saw Davis transfer two green garbage bags and a suitcase from Davis' car to Verne Allen Denke's car. Denke then drove to the East 115th Avenue residence. However, in addition to the fact that this observation took place two weeks before the search, the affidavit itself states that the officers were unable to determine if the bags and suitcases were unloaded.

The government points out that the search warrant authorized the search for documents, as well as drugs. Thus, even if there was not probable cause to search for drugs, there was probable cause to search for the documents. This argument must also fail. The only connection between the East 115th Avenue residence and the drug conspiracy charged in this indictment is the fact that two persons who were suspected of being members of that conspiracy lived at the residence. Essentially, the government is arguing that prob-

able cause to believe Barker and Hiles were involved in the drug conspiracy is enough to establish probable cause to search their home. We believe the fourth amendment requires more. The facts in the affidavit may have raised a suspicion that drugs or documents related to drug transactions would be found at the East 115th Avenue residence. But, in the absence of any *facts,* suspicion is not enough to establish probable cause to search a person's home. *See Henry v. United States,* 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959).

Furthermore, we do not think that reading the affidavits together establishes probable cause for the search of Barker and Hiles' home. Each of the affidavits contained the same information with respect to the details of the investigation, which focused primarily on Tim and Daniel Davis, Pat Sharkey, and defendant Kim Lincoln Henry. The affidavits then included a short section which highlighted the facts relevant to the particular place to be searched. Thus, in the nine-page affidavit in support of the warrant for the East 115th Avenue residence, only about 2 to 2½ pages are directed to Hiles and Barker. The remainder of the affidavit repeats what was contained in the related affidavits.

█ Although we have determined the affidavit did not contain probable cause to search the East 115th Avenue residence, the defendants have not contended that the officer acted in bad faith when executing the warrant. As such, the evidence seized during that search need not be excluded from the government's case-in-chief. *See United States v. Leon,* — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *United*

*States v. Cardall,* 773 F.2d 1128, 1132–1133 (10th Cir., 1985).[14]

The search warrant in this case was executed in April 1984, which is prior to the Supreme Court's decision in *Leon.* However, *Leon's* "good faith" exception has been applied retroactively by several courts. *See United States v. Henderson,* 746 F.2d 619 (9th Cir.1984); *United States v. Thornton,* 746 F.2d 39 (D.C.Cir.1984); *United States v. Sager,* 743 F.2d 1261 (8th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985); *United States v. Cassity,* 604 F.Supp. 1566 (E.D. Mich.1985); *United States v. Segovia-Melgar,* 595 F.Supp. 753 (D.D.C.1984). Accordingly, we shall consider this search warrant in light of the Supreme Court's decision in *Leon.*

█ In *Leon,* the Supreme Court held that the exclusionary rule would not apply to evidence seized by law enforcement officials who were acting in good faith upon a warrant issued by a neutral and detached magistrate, although the warrant is later found to be unconstitutional. *Id.* 104 S.Ct. at 3421. The Court set forth several circumstances under which evidence would be suppressed because the officers lacked a reasonable good faith belief in the validity of a search warrant. These are when (1) the affiant intentionally or recklessly misleads the magistrate with material misstatements or omissions, *e.g., Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); (2) the magistrate acted as a "rubber stamp", thereby abandoning the judicial role as neutral and detached, *e.g., Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) the warrant is based upon an

---

**14.** The good faith exception to the exclusionary rule in federal courts is based upon the Supreme Court's interpretation of the fourth amendment to the United States Constitution. We note that some legislatures have enacted "good-faith" statutes. Colorado enacted a "good-faith" statute in 1981. Colorado Revised Statutes § 16–3–308 (Supp.1981) exempts two types of action from the exclusionary rule: "good faith mistake" and "technical violation". *See United States v. Cotton,* 751 F.2d 1146, 1149

n. 2 (1985). In *Cotton,* the court concluded that because the purpose of the exclusionary rule is to deter police misconduct, the reasonableness of an officer's acts is to be assessed under the totality of the circumstances. The court also noted that the impact of Colorado's "good-faith" statute on the state's exclusionary rule was uncertain. Because the search in *Cotton* was conducted without a warrant, the court did not consider the impact, if any, of *Leon's* good faith exception.

affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot "reasonably" presume it to be valid. *United States v. Leon*, — U.S. ——, 104 S.Ct. 3405, 3421–22, 82 L.Ed.2d 677 (1984); *Voss v. Bergsgaard*, 774 F.2d 402, 404–406 (10th Cir.1985) (upholding district court's finding that search warrants were so insufficiently particular in their description of items to be seized that they amounted to an illegal writ of assistance); *United States v. Cardall*, 773 F.2d 1128, 1132–1133 (10th Cir., 1985) (when determining whether the officers relied in good faith upon a warrant, court is to look to underlying affidavit to see if it is devoid of factual support; not merely whether the facts contained in the affidavit are legally sufficient).[15] Evidence may also be suppressed where the officers conduct a search which is beyond the scope of the warrant. *United States v. Leon*, 104 S.Ct. at 3419 n. 19 (1984).

The evidence before the Court fails to establish that any of the exceptions to the "good faith rule" would apply. The defendants did point out two minor misstatements in the affidavit; however, these statements were neither material, nor were they made intentionally or with reckless disregard for the truth. Additionally, we do not find that the affidavits in support of the search warrant were so devoid of factual support so as to render the officers' reliance on the warrant wholly unwarranted. We thus conclude that the search warrant was issued without probable cause to

search the East 115th Avenue residence. However, because the warrant was executed in good faith by the officers, defendants' Motion to Suppress is DENIED.

## VIII

## MOTIONS TO SUPPRESS WIRETAPS

Several Motions to Suppress have been filed which attack the legality of the wiretaps in these cases. A brief chronology of events will be helpful to a consideration of the arguments of the defendants.

The Federal Drug Enforcement Administration (D.E.A.) began the investigation into these cases some time prior to September 1983. In September 1983, the D.E.A. requested the assistance of the Lakewood Department of Public Safety, a state law enforcement agency, and a joint, state-federal investigation was begun.

During the course of this joint investigation, two state search warrants were obtained for installation of a pen register[16] on telephone number A: one on October 5, 1983 and another on November 5, 1983. Information gathered from the state pen registers, as well as from surveillance, was then used to obtain federal pen registers. These were installed on January 20, 1984 on telephone number B, and on March 14, 1984 on telephone number A.

On March 16, 1984, this Court authorized a Title III wiretap on telephone number B. Another wiretap was authorized for telephone number A on March 30, 1984. Finally, on April 10, 1984, this Court authorized Title III oral interceptions to be placed at the residence served by A.

---

**15.** *Leon* also seems to suggest that the exclusionary rule will be applied in those instances where the warrant itself is the fruit of a prior illegal police misconduct. This would be particularly true where there is a close causal connection between misconduct and the search warrant. *United States v. Leon*, — U.S. ——, 104 S.Ct. 3405, 3415 and n. 7, 82 L.Ed.2d 677 (1984). The defendants here have argued that these search warrants have been based upon illegal wiretaps. However, because we have concluded that the wiretaps were valid, we need not reach the issue

of whether the Exclusionary Rule would apply in these circumstances.

**16.** "A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released, without, however, recording or monitoring the telephone conversation." *People v. Sporleder*, 666 P.2d 135, 137 (Colo.1983) (en banc). *Accord Smith v. Maryland*, 442 U.S. 735, 736 n. 1, 99 S.Ct. 2577, 2578 n. 1, 61 L.Ed.2d 220 (1979).

The defendants make the following arguments in support of their motions to suppress. First, they contend that the affidavits offered in support of the federal wire and oral interceptions were based upon information obtained in violations of state law and were therefore tainted. Second, they contend that the use of state officers as monitors on the federal wire interceptions was a violation of the orders authorizing the interception.

## A.

### Pen Registers

█ Under federal law, installation of a pen register on a telephone is not considered a search within the meaning of the fourth amendment. Therefore, federal officials need not obtain a search warrant prior to obtaining a pen register. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). The Colorado Supreme Court has rejected the reasoning in *Smith* and has held that a search warrant must be obtained before a pen register may be installed on a phone number. *People v. Sporleder,* 666 P.2d 135 (Colo.1983) (en banc). Relying on Article II § 7 of the Colorado Constitution, the Colorado Supreme Court recognized that a person has an expectation of privacy in the numbers dialed from a private telephone. Thus, Colorado requires a search warrant for a pen register to be installed on a telephone number.

█ State search warrants were obtained in the present case on October 5, 1984 and again on November 15, 1984. Defendants have argued that the pen register warrants were issued without probable cause and thus were illegal. Relying on *United States v. McNulty,* 729 F.2d 1243 (10th Cir.1983), they contend that since the federal wiretaps were based upon evidence derived from the illegal state pen registers, the wiretap evidence must be suppressed. We disagree.

█ A state court judge's determination that probable cause existed to issue a search warrant carries with it a strong presumption of correctness. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *United States v. McNulty,* 729 F.2d 1243 (10th Cir.1983), *reh'g en banc,* 729 F.2d 1243, 1264, 1269 (10th Cir.1984) (Logan, J., dissenting). The pen registers issued here fully complied with Colorado state law. They were only installed after Agent Morelli obtained search warrants, as required by *People v. Sporleder,* 666 P.2d 135 (Colo.1983) (en banc). The affidavit in support of the warrant outlines the course of the investigation prior to October 5, 1984. We agree with the state court's findings that the affidavit established probable cause to issue the warrants for the pen registers. Even if we were to conclude that the pen registers were installed in violation of state law, we do not read *United States v. McNulty,* 729 F.2d 1243 (10th Cir.1983), *reh'g en banc,* 729 F.2d 1243, 1264 (10th Cir.1984), as requiring the suppression of the federal wiretap in this case.

█ As a general rule, in the area of search and seizure federal law controls the admissibility of evidence in a federal criminal trial. *Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 882, 11 L.Ed.2d 777 (1964); *United States v. Aiello,* 771 F.2d 621, 627 (2nd Cir., 1985); *United States v. McNulty,* 729 F.2d 1243, 1251 (10th Cir.1983) (Doyle, J., concurring), *reh'g en banc,* 729 F.2d 1243, 1264 (10th Cir. 1984); *United States v. Sotomayor,* 592 F.2d 1219 (2d Cir.1979) (and cases cited therein). However, several circuits, including the Tenth Circuit, have fashioned a narrow exception to that general rule. These courts have held that evidence seized in violation of the state's wiretap statutes will be inadmissible in a federal criminal proceeding. *See United States v. Aiello,* 771 F.2d 621, 627 (2d Cir., 1985); *United States v. Bascaro,* 742 F.2d 1335, 1346–48 (11th Cir.1984); *United States v. McNulty,* 729 F.2d 1243 (10th Cir.1983), *reh'g en banc,* 729 F.2d 1243, 1264–66 (10th Cir. 1984).

In *McNulty,* the Tenth Circuit concluded that the federal wiretap statute itself re-

quired a federal court to defer to a state statute, which imposed stricter standards than the federal statute. *Id.* at 1264. *Accord United States v. Marion,* 535 F.2d 697 (2d Cir.1976).

The case currently before us differs from that which was before the Tenth Circuit in *McNulty.* As stated above, the *McNulty* court was faced with the admissibility of wiretap evidence obtained in violation of a state *statute.* The present case does not involve the state wiretap statute.[17] The Colorado Supreme Court's decision in *People v. Sporleder,* 666 P.2d 135 (Colo.1983) was based solely upon an interpretation of Article II § 7 of the Colorado Constitution.[18] This section is analogous to the fourth amendment of the United States Constitution. *Id.* at 139–40. *See also United States v. Tocco,* 581 F.Supp. 384, 389 (E.D.Ill.1984) (Supreme Court of Colorado interpreted an article of the state constitution, not the fourth amendment in *Sporleder* ).

The installation of the pen registers here clearly conformed with the federal constitution. *See Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). In that respect, this case differs from situations where evidence which was obtained by state officers in violation of defendant's fourth amendment rights is sought to be admitted in a federal criminal trial. *See Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). In the absence of any fourth amendment violation, the evidence is admissible in federal court. *United States v. Daniel,* 667 F.2d 783 (9th Cir.1982) (per curiam); *United States v. Kaiser,* 660 F.2d 724, 734–35 (9th Cir.1981); *United States v. Hall,* 543 F.2d 1229, 1235 (9th Cir.1976); *United States v. Keen,* 508 F.2d 986, 989 (9th Cir.1974).

We conclude that the pen registers were properly obtained in accordance with both federal and state law. We further conclude that in the absence of a violation of the Colorado wiretap statute, federal law governs the admissibility of the pen register evidence in this matter. Therefore, defendants' Motions· to Suppress are *DENIED.*

### B. Wiretap Monitors

Defendants next argue that the evidence derived from the wiretaps should be suppressed because state law enforcement officers served as monitors on the federal wiretaps. They contend that use of the state law enforcement personnel was a violation of the Court's order which authorized the wiretaps. That order authorized the interceptions by Special Agents of the Federal Drug Enforcement Administration (D.E.A.), United States Department of Justice.

Few courts have considered the issue of whether the use of state law enforcement personnel as monitors on federal wiretaps violates a court's order under 18 U.S.C. § 2516(1). Those which have concluded that, under some circumstances, the use of state monitors is not a violation of § 2516(1). *See United States v. Bynum,* 602 F.Supp. 1, 2 (D.Mass.1984); *United States v. Lyons,* 507 F.Supp. 551, 557 (D.Md.1981), *aff'd,* 695 F.2d 803 (4th Cir. 1982).

In *Lyons,* members of the District of Columbia Metropolitan Police Department assisted the D.E.A. in monitoring federally authorized wiretaps. The state officers were under the direction of the D.E.A. At least one D.E.A. agent was present at the listening post at all times. Furthermore, it was clear to the district judge who issued the order that state officers would participate in the monitoring of the phone conversations. *Id.* at 557.

According to the evidence obtained at the hearing held on this matter, these wiretaps were monitored by both federal and state officers, acting under the supervision of the D.E.A. Testimony established that at

---

**17.** Colo.Rev.Stat. § 16–15–102 (1978).

**18.** Where state law is based upon an interpretation of a state's constitution, we are not bound by the state's interpretation. We may apply an interpretation which conforms to federal law.

least one D.E.A. agent was present at the listening post at all times. Finally, this Court was well aware of the fact that state and federal officials would be involved in the interceptions. Applications for the orders were accompanied by affidavits of the Lakewood Department of Public Safety, as well as the Assistant United States Attorney.

Based upon these facts, we conclude that the use of state police officers to monitor the federal wiretap was not a violation of the Court's orders authorizing the interceptions. Accordingly, the Motions to Suppress are DENIED.

## ORDER

For the reasons stated above, IT IS HEREBY ORDERED that the following Motions be DENIED, nunc pro tunc, July 24, 1985:

1. Motions for a Pretrial Hearing Pursuant to *United States v. James;*

2. Motions for Relief from Prejudicial Joinder;

3. Motions for Severance;

4. Motion for Relief from Prejudicial Joinder (Bennett);

5. Motions for Disclosure of Confidential Informants;

6. Motions to Dismiss the Telephone Count;

7. Motions to Dismiss for Preindictment Delay;

8. Motions to Dismiss for Breach of Grand Jury Secrecy;

9. Motion to Dismiss Indictment Based Upon Violation of Rule 6(e) of the Federal Rules of Criminal Procedure;

10. Supplemental Motion to Dismiss Grand Jury Indictment Based Upon Breach of Grand Jury Secrecy;

11. Motion to Suppress Search Warrants;

12. Motions to Suppress Wiretaps.